## THE STATE OF IOWA.

DES MOINES, JUNE TERM, A. D., 1859.

In the Fourteenth Year of the State.

---

PRESENT:

HON. GEORGE G. WRIGHT, CHIEF JUSTICE.
" WM. G. WOODWARD,  } JUSTICES.
" L. D. STOCKTON,

---

HUBBARD *v.* CURTIS *et al.*

The creditor of one partner may levy upon the interest of his debtor in the partnership.

But the creditors of the firm, are entitled to be first satisfied from the partnership funds, and the separate creditors from the individual funds.

This latter rule, however, is only applied where there is a deficiency in one of the funds.

Where a partnership is insolvent, or where its solvency is doubtful, a court of equity will restrain a sale of the partnership property under an execution against an individual member of the firm, until the settlement of the partnership affairs, in order to ascertain whether the debtor-partner has a real and valuable interest over and above the liabilities of the firm.

VOL. VIII.—1

Hubbard v. Curtis et al.

But whether the sale be stayed until the partnership accounts be settled in equity, or not, the purchaser at an execution sale against a member of the firm, takes only the interest of the judgment debtor in the partnership; and takes it as the partner held it, subject to the payment of the partnership debts.

Where an execution against a member of a firm, is levied upon the partnership property, the officer is not entitled to take possession of such joint property; nor where the interest of the debtor in the firm, is sold before a settlement of the partnership affairs, does the officer deliver over the property to the purchaser.

In such a case, the purchaser takes nothing more than an interest in the partnership, which is not tangible, and cannot be made available, except under an account between the partner and the partnership; and the purchaser will be restrained from proceeding to obtain possession of the partnership property, until such an account has been taken.

Where partnership property is levied on to satisfy an individual debt of a member of the firm, a stay of the sale under the execution is not allowed, on the ground that the interests of the other partners will be affected by such sale, but is granted to ascertain and protect the rights of the joint creditors.

Nor is an account taken in such cases, *solely* to ascertain whether there is a surplus interest in the debtor-partner; but it being found that the joint effects are insufficient, or only sufficient, to meet the demands of the partnership creditors, the object is to protect the joint creditors, and direct the funds to their payment.

In a bill in equity to restrain, by injunction, the sale of partnership property, under an execution against an individual member of the firm, it is not necessary to aver positively that the co-partnership is insolvent. It is sufficient, if from the allegations of the bill, and the facts stated, an alleged insolvency is apparent.

Nor is it any ground of objection to such a bill, that the complainant does not seek a stay of the sale, merely to ascertain the debtor's interest in the partnership, but asks a perpetual injunction. The court having cognizance of the case, to take an account of the partnership affairs, and finding it insolvent in fact, must necessarily make the injunction perpetual in the end, since, in such a case, there is no interest remaining in the debtor-partner to sell.

Where a temporary injunction, staying a sale of partnership property under an execution against an individual member of the firm, was dissolved, and thereupon the property was sold to one of the respondents; and where, on the final hearing of the cause, it was determined that the debtor-partner had no interest in the firm, it being found insolvent, and it was decreed that the purchaser at the sale should restore to the receiver of the partnership, the property so purchased; *Held,* That there was no error in the proceeding.

Where it was objected to a bill in equity, to dissolve a partnership, and

settle up its affairs, that no master in chancery had been appointed to take an account of the partnership debts; and where it appeared that the record of the cause was not complete, and the final decree implied that some order was taken to ascertain and settle the partnership debts, the appellate court refused to interfere with the decree.

Where a court of equity has made a final decree, dissolving a partnership, and applying its effects to the payment of its debts, without judicially ascertaining the joint liabilities which the receiver is directed to pay, proceedings may be taken, with proper notice to the respondents, to ascertain the joint debts of the firm.

A bill to restrain the sale of partnership property, under an execution against an individual member of the firm, and for a dissolution and settlement of the partnership, for the purpose of ascertaining the interest of the separate debtor in the firm, may be filed either by the debtor-partner, or the other partners—by the joint or the separate creditors—or by the purchaser himself, where the partnership property has been sold, prior to a settlement of the affairs of the partnership.

*Appeal from the Dubuque District Court.*

Monday, April 4.

In Equity. The separate creditors of Orlando Curtis levied on personal property of the firm of Hubbard & Curtis, of which he was a member. Hubbard, the other partner, thereupon brings his bill to cause the partnership property to be first applied to the payment of the debts of the firm.

The complainant represents that, on the 26th of November, 1856, the firm, composed of Hubbard, Curtis & Smith, was dissolved, and that of Hubbard & Curtis was formed, in the lumber business, to continue four years and one month—they putting in, as capital, their interest in the former firm, estimated at $5,000 each, but whether more or less; that the firm was indebted in about $22,000, and the assets had stood at about $31,000, but owing to the depreciation of the property, and the failure of debtors, it would not realize more than $20,000, if compelled to be reduced to money as the debts mature; and that, as at present situated, the assets are insufficient to pay the indebtedness of the firm, but that it is impossible to determine how the bal-

ance would stand, on a closing up, on account of the nature of the assets and credits.

The petitioner alleges, that at the August term, 1857, the defendants, Wilcox, Perry & Eacher, obtained two judgments against the said Curtis, and John Gove & Co. obtained another; that Hayden, the sheriff, had levied the executions upon the stock of lumber of the firm, and had advertised the same for sale; and that he had seized and taken possession of the lumber, thus hindering him from exercising any control, and breaking up the business, and, in effect, dissolving the partnership.

He further represents, that as a member of the said firm, he has a lien upon the property belonging to the firm, to secure the payment of the debts of the firm, (the greater part of which are due for the lumber now in possession), and that the creditors of the firm are entitled to the benefit of such lien of the partner, to secure their joint claims, in preference to the creditors of said Curtis, and before they can proceed against the partnership funds. He therefore prays that an injunction may issue, restraining the above defendants, and Hayden, the said sheriff, from taking or selling, or in any way interfering with the property of the firm; and to the end that the rights and equities of all the parties may be ascertained, that the court would take cognizance of the matter; that the firm of Hubbard & Curtis may be declared dissolved; that a receiver may be appointed to wind up the affairs of the said firm, and take charge of all the assets of the same; and that he be instructed to pay the debts of the firm as soon as may be, out of the said property and assets.

The defendants, Wilcox, Perry & Eacher, and Hayden, answer, admitting their judgments recovered, as alleged, to the amount of $2033,84, and the levy of the executions; and they insist upon the right of the sheriff to sell the property taken on their executions. And the firm of Wilcox, Perry & Eacher afterward answer, denying the insolvency of the firm of Hubbard & Curtis, and also charging

a combination between those two to defraud the creditors of Curtis, and the firm of H. & C., and these defendants especially.

The defendants, Gove & Co., filed a demurrer, upon which the record shows no action. They also filed an answer, but the final entry of decree states that they appeared by counsel, and made known to the court that they did not resist a decree as prayed for, and no question is made, arising upon their answer separately.

Upon the motion of Wilcox, Perry & Eacher, the injunction was dissolved, so far as to allow the sheriff to proceed and sell the property attached, subject to the liability to pay the partnership debts of the firm of Hubbard & Curtis. And on the final hearing, it was decreed that the partnership between Hubbard & Curtis be dissolved; that the affairs of said firm be wound up; that the appointment of John Edwards as receiver of that firm, heretofore made, be confirmed, and that he, as such receiver, be authorized and commanded to take possession of all the assets of the firm, and convert them into money, and collect all dues, and pay the debts of the firm in the order following: 1. The cost of this suit and the expenses of the trust. 2. All claims secured by liens upon property of the firm. 3. The claims of all other creditors of the firm, *pro rata.* 4. The two judgments of Wilcox, Perry & Eacher against Curtis; and any balance remaining, to be held subject to the order of the court. And it is further ordered that the sheriff, Hayden, deliver to the receiver any property held by him under the executions above named, and he is enjoined from selling it, or interfering in the disposal of it; and he is directed to pay to the receiver the money paid by the receiver to him since the commencement of this suit. It is further decreed, that Wilcox, Perry & Eacher deliver to the receiver all lumber, or other property, bid off and purchased by them, under the above judgments and executions against Curtis, and they are enjoined from further interfering in relation to the same. The respondents, Hayden and Wilcox, Perry & Eacher, appeal.

*Cooley, Blatchley & Adams,* for the complainant.

Each partner has a lien on all the partnership property, and it is his right to insist that all partnership property be applied in payment of the partnership debts, and to the purposes contemplated by the partnership agreement. Story on Part., sec. 97. *Pierce* v. *Wilson,* 2 Iowa, 20.

If a partner, or any person claiming under a partner, as a creditor, assignee or vendee, seeks to divert any of the partnership property from partnership uses, equity will intervene, and enforce the partnership lien, and see to it that the property is applied in satisfaction of such liens. 1 Eden on Injunctions, 53.

The sheriff, under an execution against a partner, may seize the partnership property, and sell the interest of the debtor-partner therein, and deliver the property to the purchaser; but equity will intervene for the benefit of the debtor-partner, as well as others interested, and enjoin a sale until an account of the partnership can be taken, and his interest ascertained. Story on Part., sec. 264; Story, Eq. Jur., sec. 678; *Place* v. *Sweetzer,* 16 Ohio, 142; *Washburn* v. *Bank of Bellows Falls,* 19 Vt., 278; *Cammack* v. *Johnston,* 1 Gr., Ch., (N. J.,) 163; *Newhall* v. *Buckingham,* 14 Ill., 405; *Moore* v. *Sample,* 3 Ala., (N. S)., 319; Willards Eq., 7245; 12 Wend., 134.

So, if the sheriff seizes partnership property upon an execution against one partner, equity, upon a bill to wind up the partnership and to appoint a receiver, will intervene by injunction. *Witter* v. *Richards,* 10 Conn., 40; *Filley* v. *Phelps,* 18 Conn., 299; Story on Part., sec. 264; 1 Eden on Injunctions, 53.

Equity should intervene in such cases: 1. To prevent the sacrifice of the debtor-partner's interest, for there is the same reason for equitable action now as in the case last before instanced. 2. To preserve the other partner's lien; for, otherwise, he might have to follow the property into the hands of vendees of the sheriff, and their successors,

and be in danger of losing the property; 3. Because equity must so intervene, in order to perform what it has undertaken, viz: to wind up the partnership. Equity cannot wind up the partnership without taking possession of the partnership property; and it cannot do this, without enjoining the sheriff, and taking the property out of his hands. If equity will not do this, it should not undertake to wind up partnerships while any of the property is in the hands of sheriffs.

The object of the creditors of the debtor-partner is to convert his interest in the partnership property into money, to be applied on their debts; the object of the other partner is to convert this property into money for himself, the firm, and the firm creditors. The objects of both classes of creditors can be better accomplished by a court of equity than of law. The interests of all parties concerned are protected, and those of each and every party are better cared for than they could be at law.

*Griffeth & Knight*, and *Wm. T. Barker*, for the appellants.

1. Execution against one partner may be levied upon the joint property of the partnership, and the sheriff may take possession thereof, and sell the interest of defendant in execution therein, and deliver possession to the vendee, who will take, as tenant in common with the other partners, subject to an account between the partners, and the payment of the partnership debts. *Phillips* v. *Cook*, 24 Wendell, 389; Willard's Eq. Jur., 723, 724; Story on Part., secs. 260, 263; Code of Iowa, sec. 1971.

2. And a court of equity will not enjoin against such sale. Code of Iowa, sec. 1917; *Payne* v. *Moody*, 2 Johns., Ch., 548; *Brewster et al.* v. *Hammet & Lane*, 4 Conn., 540; *Litler* v. *Walker*, 1 Freemans Ch., 77; *Phillips* v. *Cook*, 24 Wendell, 389. Section 1917 of the Code of Iowa was made to settle this question; and the defendants, Wilcox, Perry & Eacher were entitled to the security by bond there given.

3. But plaintiff's counsel say, a court of equity will stay such sale, and cite authorities. But the authorities cited by plaintiff will be found, on examination, to go only to the point that the sale will be stayed *till an account be taken to ascertain the interest of defendant in execution in the partnership property levied on;* the said property in the meantime remaining in the custody of the sheriff, with the right to sell the interest of defendant in execution therein, as soon as that interest is ascertained; and this is done only where it is made to appear, that the interest of the other partners will be damaged by a sale made prior to the taking of an account. *This is not the case at bar.* The plaintiff in the case under consideration, does *not* seek a stay of the sale till an account be taken, leaving the property in the meantime in the possession of the sheriff. He does not even ask an account to be taken to ascertain the interest of each partner; nor does he allege, or show, that either his interest, or the interest of his co-partner, the defendant in execution, will be damaged by the sale. But he seeks a perpetual injunction against the sale; and, more than this, he asks that a receiver be appointed, and that the sheriff be required to surrender the property levied on, to the receiver; and that the receiver be authorized to sell the property so taken from the sheriff, and to apply the proceeds thereof to the payment of the partnership debts; and all this, without alleging or showing that any damage will arise, either to his interest, or to that of the defendant in execution, by a sheriff's sale at law; and without asking or seeking an account of the partnership funds, its assets and liabilities—without a reference to a master in chancery to ascertain the liabilities and assets of the firm—and without a competent allegation or showing of insolvency, without which the joint creditors are not allowed a preference over individual creditors. And this is what has been done by the court below. A perpetual injunction against the sale has been granted; a receiver appointed; the sheriff has been required to deliver up possession of the property

levied on, to the receiver; the receiver has been authorized to sell the same; and, without the taking of an account—without a reference to a master to ascertain the liabilities, before whom these defendants would have had an opportunity to appear and contest fraudulent or pretended claims, the receiver has been authorized to appropriate the proceeds of the property taken from the sheriff, to the payment of the partnership creditors, and, in doing so, to "go it blind."

The authorities cited by the plaintiff do not approach these positions; they do not touch this case. There is no authority in all equity jurisprudence that countenances, or will wink at such proceedings. But these authorities, worthless as they are so far as this case is concerned, are overborne by contrary decisions and principles of jurisprudence.

4. This, then, is not a case where one partner seeks a stay of an execution sale at law of the interest of a co-partner in the partnership property, till an account be taken to ascertain that interest. It is a case where one partner seeks to defeat a creditor of his co-partner, in subjecting his (the debtor partner's), interest in co-partnership property to the payment of his individual debt. And to effect this, he ostensibly claims, (though in collusion with the debtor partner, as we allege), an appropriation of the partnership property to the payment of the partnership creditors first, and in preference to the individual creditors.

The principle of paying joint creditors out of joint property, and individual creditors out of individual property, arose (in England), in bankruptcy. It is applied only in the cases of the insolvency of the partners, or the death of one partner; and while the partnership, or partners, are solvent, and the business going on, a court of equity will not interfere and apply the principle against individual creditors. Story on Part., secs. 358, 361; note to sec. 97; note to sec. 326; Ib., note 1 to sec. 326; *ex parte Williams*, 11 Vesey, 3; 1 Barb., 480; *Ketchum* v. *Durkee*, 3 Ib., 46; *Kirby* v. *Schoonmaker*, 6 Vesey, 119, quoted in note 2 to

sec. 97 of Story on Part.; 3 Kent, (marginal page), 64; *Wilcox* v. *Kellogg*, 11 Ohio, 399. The decision of Justice Redfield in *Washburn* v. *The Bank of Bellows Falls et al.*, 19 Vt., 278, is based upon the insolvency of the partners.

5. Until the contrary is shown, solvency is presumed, and partners considered as having equal interests.

6. The individual solvency of the members of the firm of Hubbard & Curtis, is not questioned.

7. Is it alleged, or shown, that the firm of Hubbard & Curtis is insolvent? It is not fairly and competently alleged. It is denied by these defendants, under oath. At the time the executions were levied, Nov. 10, 1857, there is nothing that shows insolvency. At the time this suit was brought, Dec. 26, 1857, the solvency of the firm is shown by the first report of the receiver. There is no evidence of insolvency to overcome a bare denial, much less to overcome a denial under oath, which, this court has held more than once, must be met with more than the testimony of one witness.

8. When equity is invoked to apply the principle of paying joint debts out of the joint property, to the exclusion of individual creditors of one partner, it must not only be shown that the partnership and the partners are insolvent, but it must also appear that the joint creditors have no remedy at law. *Kirby* v. *Schoonmaker*, 3 Barb. Ch. 50. The reports of Iowa, over and again, affirm that old first principle in equity jurisprudence : that where there is a remedy at law, equity takes no jurisdiction. The joint creditors of Hubbard & Curtis have their remedy at law ; and, indeed, they are not parties to this suit, and seek no relief at the hands of this court.

9. The sale of partnership property to a stranger, or even to a partner of the same firm, passes the property free from all liability to the payment of partnership debts. Story on Part., secs. 358, 359, and sec. 97 and note ; 3 Kent's Commentaries, (8th ed.) marginal pp. 65, 78, 79 ; 11 Vesey, 3 ; *ex parte Williams*, 1 Barbour's Ch., 480 ;

*Ketchum* v. *Durkee*, 13 Ala., 837; *Reese* v. *Bradford*, 3 Barb. Ch., 46; *Kirby* v. *Schoonmaker*, 6 Vesey, 119; *Wilcox* v. *Kellogg*, 11 Ohio, 394.

WOODWARD, J.—The record, as contained in the transcript, is imperfect, in not stating some of the steps in the progress of the cause. Thus, there is no record of the first appointment of the receiver; and several proceedings are referred to, in the final decree, of which there is no mention in the progress of the cause. But it is probable that these, or some of them, were omitted as having no important bearing on the result. The bill was filed in December, 1857, at which time the injunction was allowed. In January, 1858, the receiver gives bond, and, in February, he makes a first report. On motion, the injunction is dissolved so far as to allow the sheriff to sell, but holding the proceeds liable to the payment of the joint debts, if it should be so decreed. Then the final decree orders the money to be so applied, and perpetuates the injunction. Curtis filed an answer admitting the matter of the bill, and consenting to a decree in accordance therewith. The final entry states that Gove & Co., who had filed a demurrer and an answer, appeared by counsel, and orally stated that they did not resist a decree, such as was prayed for. A judgment was recovered by C. W. & S. L. Keith against said Curtis, which is not regularly introduced into the pleadings, but as a portion of the property of the firm was attached in that suit, it is agreed by counsel that if it is finally held, that the judgments of Wilcox, Perry & Eacher should be paid from the assets of Hubbard & Curtis, then the court may also decree the payment of the judgment of Keith. These circumstances and facts are here mentioned, either to explain the state of the record, or the case in relation to them, or to dispose of them at once, as having no important bearing in the cause.

Of this latter character, is the matter of the sale to Amsden. As the property came back into the hands of the

firm, and stands with the rest of their assets, and constitutes a part of them, either by a cancelation of the original sale, or by a re-sale, (and which seems immaterial), no question of consequence arises in relation to it, and the subject does not appear to have any bearing in the case, and may be dismissed without further remark.

The true questions arising in the case, are upon the course of proceedure, and the rights of the parties, when the separate creditor of a partner levies upon, or aims to reach, the interest of that partner in the joint property; and what are the rights of the joint creditors, and how are they to be enforced?

Two propositions are familiar to all. That the creditor of one partner may levy upon the interest of his debtor in the firm; and that the creditors of the firm are entitled to be first satisfied from the partnership funds, and the separate creditors from the individual funds. The application and test of this second rule, arises only where there is a deficiency in one of the funds. Consequently, the doctrine had its origin under insolvent and bankrupt laws. It is not confined to cases actually arising under such laws, but requires an actual insolvency as the ground of its application. This is the usual mode of stating the rule, but it is not strictly true, for absolute insolvency is not required. If, for instance, a firm is just solvent, and no more, having just sufficient to pay its creditors, the creditors of individual partners could not come in. And so it would be of the separate fund.

In the present case, the creditors of Curtis alone levied on partnership property. Hubbard, his partner, in behalf of the firm, and of the creditors of the firm, obtained an injunction to stay the sale. On this point, there is a difference among the authorities. It is upon the question, whether the court will stay the sale, and throw the burden upon the creditor levying to wait the settlement of the partnership affairs, to ascertain whether the debtor-partner has a real and valuable interest, over and above the liabilities of the firm; or

whether the officer shall proceed to sell, letting the purchaser buy at his own risk, and he take the burden of undergoing a settlement of the partnership, and take according to the result—nothing, if there be no balance due the debtor-partner, and something, if there be a balance.

That the court would not stay a sale, is held in *Litler* v. *Walker*, 1 Freem. Ch., (Miss.,) 78 ; by Chan. Kent, in *Moody* v. *Paine*, 2 Johns. Ch., 548 ; and in 3 Kent's Com., 65, note (*f*), Chancellor Kent appears to have been constrained by prior cases in his own state, and in the passage last above referred to, he notices the position of Judge STORY, and concedes that the other is the more suitable rule. *Sougham* v. *Carter*, 12 Wend., 131 ; *Philips* v. *Cook*, 24 Ib., 390 ; *Brewster* v. *Hammett*, 4 Conn., 540 ; *Parker* v. *Pistor*, 3 B. & P., 288.

On the other side of the question are : 1 Eden on Inj., 53 and note ; Collyer on Part., sec. 340, citing *Taylor* v. *Field*, 4 Ves., 396 ; S. C. 15 Ves., 559, note ; *Bevan* v. *Lewis*, 1 Sim., 376 ; Gow on Part., (3d Ed.) 144 ; Collyer sec. 831, states this case precisely, citing 1 Mad. Ch. 131, (which Mr. Kent says is not supported by his authorities); *Lowndes* v. *Saylor*, 1 Madd., 423 ; *Newell* v. *Townsend*, 6 Sim., 419 ; *In re Smith*, 16 Johns., 106 ; *Newhall* v. *Buckingham*, 14 Ill., 405 ; *Place* v. *Sweitzer*, 15 Ohio, 142 ; *Washburne* v. *Bank of B. Falls*, 19 Vt., 278 ; 1 Story Eq., secs. 675, 678, *et seq.*; Story on Part., secs, 97, 260, *et seq.; McDonald* v. *Beach*, 2 Blackf., 55.

Some of the above cases are at law, but they discuss questions and cases bearing closely upon the pure equity view of the subject. Such is the above case of *Phillips* v. *Cook ;* and in *Sougham* v. *Carter*, though at law, Ch. J. SAVAGE says : The court would stay a sale on execution to allow an account to be taken in equity, and if this was not done, yet, only the interest of the partner would be sold. But, according to the rule in equity, he says, the partnership accounts should all be liquidated before a sale on execution, and cites 16 Johns., 106 ; and 2 Ves. & Bea., 300. In either case,

however, whether the sale be stayed till the accounts are settled in equity, or not, all the books agree that the purchaser takes only the interest of the judgment debtor, and takes it as he held it, that is, subject to the payment of the partnership debts.

A question standing still earlier in the order of proceeding, has been whether the officer shall take actual possession of the joint property, and, on a sale, deliver it to the purchaser, or whether he only lets in the purchaser to a tenancy in common with the other partner; and perhaps the weight of authority favors the actual taking and delivering, and some of the cases have held what seems rather strong and hard doctrine on this subject. But, however this may be, it is agreed that the purchaser takes, subject to the settlement of the partnership, and if there is no surplus belonging to the debtor, he takes nothing, and the property is taken from him by the joint creditors. See the above authorities.

If the property is sold before an account is taken, of course the interest of the debtor is liable to be sacrificed, on account of the uncertainty, and the purchaser is burdened with the settlement of the business of the firm. In the other mode of proceeding, the creditor takes this upon himself, and if there is no balance, there is nothing to sell. The rule is clearly summed up and stated in Eden on Inj., 53–5. Having stated that the subject had undergone an elaborate discussion in a case in the Exchequer, *Taylor* v. *Field*, 5 Ves., 396, and 15 Ves., 559, note, he states the conclusion as there held: "Whether the partner, for valuable consideration, sells his interest in the partnership, or his representatives take it upon his death, or a creditor takes it in execution, or assigns under a commission, the party coming in in the right of the partner, takes nothing more than an interest in the partnership, which is not tangible, and cannot be made available, except under an account between the partnership and the partner. The creditor will, accordingly, be restrained from proceeding, until such account has been taken." This seems to be the more consistent rule, and supported by the

Hubbard v. Curtis et al.

greater weight of authority. The following cases, also, bear upon the subject: *Fox* v. *Hanberry*, Cowp., 445; *Richardson* v. *Gooding*, 2 Vern., 293; *West* v. *Skipp*, 1 Ves., 239; *Hankey* v. *Garrett*, 3 Bro. C. C., 457; and 1 Ves. Jr., 236; particularly, *Barker* v. *Goodwin*, 11 Ves., 78; *Young* v. *Keigleby*, 15 Ves., 557; *Dutton* v. *Morrisson*, 17 Ves., 193.

In reply to suggestions of the respondent's counsel, we would say, that the stay of sale is not allowed upon the ground that the interests of the other partners will be 'damaged by a sale, but it is to ascertain and protect the rights of the joint creditors. Again : the account is not taken solely to ascertain whether there is a surplus interest in the debtor, as counsel seem to suppose ; but it being found that the joint effects are not sufficient, or only sufficient, to meet the demands of the joint creditors, the object is to protect these, and direct the funds to their payment.

It is objected that the complainant does not distinctly allege insolvency, and that he does not seek a stay of sale merely to ascertain the debtor's interest, but asks a perpetual injunction. It is true that the bill is not as full and explicit as it might well have been ; but, what with the facts stated, and the averments of the petition, an alleged insolvency is apparent. He avers that the assets are not sufficient to discharge the indebtedness, and upon this basis he asks a perpetual injunction. The court having cognizance of the case to take an account of the partnership affairs, finding it insolvent in fact, must necessarily make the injunction perpetual in the end, since there was no interest remaining in the debtor, to sell.

It appears, that in the present case, the court dissolved the injunction, so that the officer proceeded to sell, and, therefore, it is questionable whether the point is properly made as to whether an injunction should be allowed to stay a sale. Yet the whole proceeding is so involved, one part with another, that we have given attention to it. At the sale, the respondents, Wilcox, Perry & Eacher, became the purchasers ; and it being ascertained that there is no interest in the debtor for

his separate creditors, they are directed in the decree to restore to the receiver the property purchased.   This is what we have remarked would be the case with any other purchaser, where it should be ascertained that there was no surplus interest in the debtor-partner.

As. to the objection that no master in chancery is appointed to take an account of the partnership debts, or any tribunal or proceeding, such that the defendants could appear and contest claims set up, it is to be remarked that the record is not full. There is an evident omission to state some of the steps in the course of the proceeding, and the cause seems to have been prepared to bring to this court certain question, only.   It is a matter of course that the court should take some order to ascertain the true joint liability ; and though the record as presented to us, fails to show what this was, (as in some other respects also), yet, as the final decree implies that some order was taken, we cannot see our way clear, to say there was error, either in what was done, or what was omitted to be done.   If, in truth, the court has not judicially ascertained the joint liabilities which the receiver is directed to pay, this should still be done, with proper notice to the defendants.

It has been remarked that insolvency is fairly and sufficiently alleged, and we think it is proved, too.   It would not give a just view to regard the first report of the receiver, alone, for this is but a general showing of the state of the firm, at his appointment, setting down the lumber at cost, and the debts and liabilities both ways at their face ; whilst the second report is made after the receiver had had time to ascertain the true condition of things, and in truth, has relation to the time of his appointment.   This shows the actual state of the firm much more truly than the first.

Finally, it seems that the bill in such a case, may be filed either by the debtor-partner, or the remaining partners —by the joint or the separate creditors— or the purchaser. Story on Part., section 263 ; 3 Kent, 65, note ; *Washburn* v. *Bank of Bellows Falls*, 19 Vermont, 278.   This

last case says that the partnership creditors have only to make out a *prima facie* case of insolvency. And Lord Rosslyn said that the principle of distribution to joint and separate creditors, involved in these cases, was applicable not only in bankruptcy, but upon general principles of equity. 3 Ves., 240; 3 Kent, 66, note.

In conclusion, we are satisfied that the bill was correctly sustained, and that there is not error in the final decree. If there was a want of proper proceeding in ascertaining and settling the claims of the partnership creditors, it is not made to appear; and as the record sent up manifestly omits some portion of the proceedings, we cannot infer that the proper measures were not taken.

The decree of the district court is affirmed.