POOLE, GILLIAM & CO. v. SENEY ET AL.

AUERBACH, FINCH & CO. v. THE SAME.

CAMPBELL & BURBANK v. THE SAME.

JOHN MELHAP, SON & CO. v. THE SAME.

1. **Chattel Mortgage:** FRAUDULENT TRANSFER: PROTECTION TO DILI-GENT CREDITOR. The law will protect a creditor who by his diligence has secured his own claim, even though he knew of the failing condition of the debtor when he accepted the security, if his only purpose in accepting it was to protect his own interest.

2. ——: ——: EVIDENCE: DISPARITY BETWEEN SECURITY AND DEBT. The fact that the debt secured is less than the amount named in a chattel mortgage may be regarded as some evidence of a fraudulent intent, but it must be considered in the light of surrounding circumstances.

3. **Partnership:** DISSOLUTION OF AND DIVISION OF PROPERTY: PRIMARY LIABILITY OF FIRM PROPERTY FOR FIRM DEBTS. The rule that the assets of a partnership will first be applied to the satisfaction of firm

debts, and that the separate creditors of the partners can seek indemnity only from the surplus, is for the benefit and protection of the partners; and if, upon dissolution, they waive their privilege by dividing the property between them, and then mortgage it severally to secure their individual debts, the creditors of the firm have no ground for complaint. See authorities cited.

## *Appeal from Franklin Circuit Court.*

### WEDNESDAY, JUNE 10.

THESE are actions in equity to set aside two mortgages given by defendant John Seney and wife to Charles Seney, and to subject the property covered thereby to the payment of certain judgments obtained by plaintiffs against John Seney and the firm of Combellick & Seney. The petitions in the several cases are substantially alike, and they were all submitted on the same evidence.

There are two counts in each petition. In the first count it is averred that the plaintiffs obtained judgments for certain amounts against John Seney, and that he was the owner of certain real estate and personal property which was subject to judicial sale for the satisfaction of said judgments; but that, before said judgments were obtained, said John Seney had executed two mortgages on said property to Charles Seney to secure an alleged indebtedness of $3,270 to him; that John Seney was not indebted to Charles in that amount, or any portion of it, but that said mortgages were given for the purpose of hindering and delaying plaintiffs in the collection of their debts against John Seney, and that they were given without consideration, and that the amount secured by the mortgages was greater than the actual value of the property covered thereby, and that John Seney had no other property out of which said judgment could be collected.

In the second count it is averred that the plaintiffs also obtained judgments against the firm of Combellick & Seney, and that John Seney was a member of that firm, and that the firm was dissolved two days before the execution of the mort-

gages to Charles Seney; that it was insolvent at the time of the dissolution, and that the property covered by the mortgages was assets of the partnership, and the debt secured by the mortgages was the individual debt of John Seney. The answers deny the allegations that the mortgages were voluntary, or that they were given with the fraudulent intent alleged. They also deny that the debt secured by the mortgages was the individual debt of John Seney, and allege that a portion of said debt was the debt of Combellick & Seney. The circuit court rendered judgment for plaintiffs, setting aside the mortgages, and subjecting the property to sale in satisfaction of the judgments. Defendants appeal.

*McKenzie & Hemingway*, for appellants.

*Taylor & Evans*, for appellees.

REED, J.—The allegation in the first count of the petition, that the mortgages were voluntary and were given with

1. CHATTEL morfgage: fraudulent transfer: protection to . diligent creditor.

intent to hinder and delay the creditors of John Seney, is not established by the evidence. Both John Seney and Charles Seney swear to the existence of the debt secured by the mortgage, and they give the different items which they say go to make up the sum of the indebtedness, and state the different transactions out of which the several items of indebtedness arose. Their statements are not contradicted in any respect. Nor are the witnesses shown to be unworthy of belief. Nor is the story they tell unreasonable or incredible. To reach the conclusion that the mortgages were voluntary, we should have to disregard the presumption arising from the transaction itself, and at the same time reject the testimony of two witnesses who are in no manner discredited, and we are not warranted in doing this. It is shown that John Seney was insolvent at the time the mortgages were given, and that he was then largely indebted; but Charles swears that he had no knowledge of these facts when he accepted the mortgages, and we

find no circumstances established by the evidence which tend to show that his statement in that respect is false. And besides this, the law will protect the creditor who by his diligence has secured his own claim, even though he knew of the failing condition of the debtor when he accepted the security, if his only purpose in accepting it was to protect his own interest.

The amount secured by the mortgages is somewhat in excess of the amount of the several items which the witnesses swore were included in it. This circumstance should be considered in determining whether the transaction was fraudulent. The fact that the mortgage is given ostensibly to secure an amount in excess of the real amount of the indebtedness, standing alone, has some tendency to show a fraudulent intent in the transaction. But its weight as evidence of fraud is largely affected by the other circumstances of the case. The transactions out of which the indebtedness from John Seney to Charles arose covered some six years. They consisted of a number of advances of money made by Charles to John, and payments of money which he had made for him to other parties, and sales of property to him.

*2. ——: ——: evidence: disparity between security and debt.*

At the time the mortgage was given there was an accounting between the parties. Interest was computed on the several items of indebtedness. But the amount named in the mortgages is in excess of the items given by the witnesses and the interest thereon, at the highest legal rate, for the time the different items of indebtedness had existed. The excess, however, is not large, and the value of the property covered by the mortgages is not much in excess of the real amount of the indebtedness. We do not see, then, that anything was to be gained by the parties by giving the mortgage for a sum in excess of the real amount of the debt. The circumstance, then, is but very slight evidence of fraud; and, upon a consideration of all the evidence before us, we cannot say that the alleged fraudulent intent is proven.

II.   The evidence introduced in support of the second count of the petitions established the following facts:   The property covered by the mortgages in question

3. PARTNER-
SHIP: disso-
lution and di-
vison of prop-
erty: primary
liability of
firm property
for firm debts.

belonged, during the existence of the firm, to Combellick & Seney, of which firm John Seney was a member.   The partnership was dissolved two days before the mortgages were given.   By the contract of dissolution the notes and accounts of the firm were to be collected by Combellick, and the proceeds applied to the payment of the firm debts.   As his share of the assets, Combellick took the stock of merchandise which the firm owned, and Seney took the property covered by the mortgages in question.   It turned out that the notes and accounts were entirely insufficient for the payment of the firm debts.   It was also discovered that the firm was insolvent at the time of the dissolution, although this was unknown to the members of the firm until after the dissolution.   The judgments obtained by the plaintiffs were for debts of the firm.   But the debt secured by the mortgages is the individual debt of John Seney.   On these facts plaintiffs contend that the mortgages are fraudulent *per se* as against the creditors of the partnership..

Where the assets of a partnership have gone into equity for distribution, the rule undoubtedly is that they will first be applied to the satisfaction of the debts of the partnership, and the separate creditors of the members of the firm can seek indemnity only from the surplus after the satisfaction of the partnership debts.   *McCulloh v. Dashiell's Adm'r*, 1 Har. & G., 96; *Murray v. Murray*, 5 Johns. Ch., 60; *Murrill v. Neill*, 8 How., 414.   This rule, however, is for the benefit of the partners.   Each partner is individually liable for all of the debts of the partnership, but he has the right to have the property of the firm applied to their satisfaction. The creditors of the firm have no lien on or equity in the partnership property.   Their right is simply to have the judgments which they may obtain on their claims satisfied

out of the partnership property or the individual property of the partners. As the rule exists for the protection of the partners, they may waive its benefits; and, when they have done this, the creditors have no grounds of complaint. This doctrine has been frequently recognized and affirmed by this court. See *Scudder v. Delashmut*, 7 Iowa, 39; *Hawk Eye Woolen Mills v. Conklin*, 26 Id., 422; *City of Moquoketa v. Willey*, 35 Id., 323; *George v. Wamsley*, 64 Id., 175. See, also, *Ladd v. Griswold*, 4 Gilman, 25.

When the partnership in question was dissolved, and Combellick relinquished his right to the property, and consented that Seney might take it as his individual property, he waived his right to have it appropriated to the payment of the partnership debts. It may be that equity would have afforded him relief against the contract because of the mutual mistake of the parties in entering into it, but he is not here complaining. And plaintiffs had no such interest in it as will enable them to follow it into the hands of a third party, and have it applied specially to the satisfaction of their debts. We think, therefore, that plaintiffs have not shown themselves entitled to relief on either ground alleged in their petitions, and the several judgments will be

