A. D. SIMMONS et al., Plaintiffs, v. L. L. SIMMONS et al., Defendants.

IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY, Appellant, v. J. H. LEWIS et al., Appellees.

No. 41741.

FEBRUARY 7, 1933.

Murrow & Miles and Strock, Sloan & Dyer, for Iowa-Des Moines National Bank & Trust Company, appellant.

L. E. Crist, O. M. Slaymaker and R. E. Killmar, for J. H. Lewis, Receiver, appellee.

O. M. Slaymaker and R. E. Killmar, for J. J. Fleming, Intervener, appellee.

KINDIG, C. J.—Simmons & Company, a co-partnership, for many years operated a general banking business at Osceola. On December 10, 1930, it closed its doors, and a receiver was appointed to liquidate its affairs. At this time there were six members in the partnership. They were A. D. Simmons, L. L. Simmons, Paul Simmons, N. C. Hoffman, W. B. Murray, and W. B. Emary.

The receivership proceeding was instituted by some of the partners against the others. A. A. Nowers first was appointed temporary receiver. Thereafter, on December 15, 1930, the receivership was made permanent, and D. T. Eells became the permanent receiver. Then, on January 2, 1931, the district court by order required each of the six partners to convey his respective property to the receiver under the condition that the receiver hold such property separate from the partnership property and in trust for the benefit of the individual and firm creditors, according to law, as their interests might appear.

In compliance with the order, five of the individual partners immediately made conveyance of their respective properties to the receiver. Later Murray turned at least $50,000 worth of property over to the receiver to be distributed to his individual or to the partnership creditors, according to which of them under the law is entitled thereto. Consequently the receiver had in his possession the property of the partnership and the property of each individual partner. These properties were kept separate by the receiver to be finally disposed of as above indicated, according to law. By thus transferring his property to the receiver, the partner Murray did not intend to waive his right of having the same distributed among the

partnership and individual creditors, as the rules of this state require. This fact is obvious, because the partner Murray did not make an absolute conveyance, but transferred the property to the receiver to be distributed according to law.

Apparently the private property of the partner W. B. Murray consists of notes and mortgages amounting to approximately $50,-000, and 360 acres of clear land located in Clarke County. The property belonging to the partner Murray is primarily involved in the present litigation. During the latter months of its existence, Simmons & Company borrowed extensively from the claimant-appel-lant, Iowa-Des Moines National Bank & Trust Company. Said last-named institution is located in Des Moines. On October 11, 1930, A. D. Simmons came to Des Moines, where he consulted with Clyde Brenton and J. R. Capps at the Iowa-Des Moines National Bank & Trust Company. Such consultation was for the purpose of determining on what basis the Des Moines bank would loan more money to Simmons & Company, the co-partnership. After some discussion, it was agreed between the Des Moines bank and Simmons that Simmons & Company would be loaned further money providing, in addition to certain notes to be pledged, the individual partners would sign a guaranty that Simmons & Company would pay all loans thus made, together with all unpaid past loans. No definite sum was agreed upon. But it was agreed between A. D. Simmons and the Des Moines bank that the guaranty should cover $150,000, which amount Simmons & Company contemplated borrowing.

A blank guaranty agreement was furnished by the Des Moines bank. This blank agreement was taken by A. D. Simmons for the purpose of obtaining the signatures of the individual partners thereto. Accordingly A. D. Simmons procured the signature of each partner to the written guaranty, including that of W. B. Murray. Thereafter, on October 13, 1930, A. D. Simmons brought back to the Iowa-Des Moines National Bank & Trust Company, at Des Moines, the completed guaranty agreement with the signatures of the partners thereto. When thus delivered, the completed guaranty agreement was regular on its face, and the Iowa-Des Moines National Bank & Trust Company knew of no defects in, or defenses to, the instrument.

Relying upon the validity of the guaranty, the Iowa-Des Moines National Bank & Trust Company loaned Simmons & Company additional money. On October 13, 1930, the Des Moines Bank loaned

Simmons & Company $25,000 on the strength of the guaranty. Later, on October 28th, the Des Moines bank, relying on the guaranty, loaned Simmons & Company $15,000; and then again the Des Moines banking institution on November 21, 1930, still depending on the guaranty, loaned Simmons & Company an additional $10,000. At the time of the trial, the balance due the Des Moines bank for the moneys thus borrowed by Simmons & Company totaled $79,538.51. Obviously that sum includes approximately $29,538.51 which was loaned by the Des Moines Bank to Simmons & Company before the guaranty agreement; but, as previously explained, the guaranty covered past unpaid loans, as well as present or future. Thus the entire $79,538.51 above named was covered by the guaranty agreement. Apparently the original amount of the loan was reduced by the application of certain collateral securities given by Simmons & Company to the Des Moines Bank.

In due time, under the receivership proceedings, claims of the various creditors of Simmons & Company were filed with the receiver. Included among these claims was the $79,538.51 held by the Des Moines bank. Among these claims of the Des Moines bank were $59,974.35 for bills payable and $19,564.16 for rediscounts, thus making a total, as before said, of $79,538.51.

It appears that the receiver paid the creditors of the copartnership, including the Des Moines bank, a four per cent dividend from the partnership property of Simmons & Company. Following that payment, the Des Moines bank, on April 14, 1931, filed its claim against the individual estate of the partner W. B. Murray on the theory that he was personally liable to the Des Moines institution on the aforesaid written guaranty. Subsequently, on May 19, 1931, the receiver of Simmons & Company filed a claim against the property of the individual members of the partnership on behalf of all the partnership creditors for $995,000. This claim was thus filed by the receiver on the theory that the partnership property would lack that amount of paying all the claims filed. The Des Moines bank asked that its claim, above named, be allowed against the individual property of the partner W. B. Murray, and be paid therefrom before partnership claims are satisfied out of such individual property. Many defenses were made to this application of the Des Moines bank by the receiver. These defenses will be considered in the order hereinafter followed.

For some reason, after the appointment of Eells, J. H. Lewis

seems to have been made receiver for Simmons & Company. J. J. Fleming, having an interest in the controversy in favor of the partnership, intervened and contested the claim of the Des Moines bank. As before stated, the trial court allowed the two claims of the Des Moines bank, aggregating $79,538.51. That aggregate amount was allowed as a general claim against the partnership. When thus allowing the Des Moines bank's claim as general, the district court provided that all collections made on collateral should be applied thereon before dividends were paid. The district court refused to marshal the assets as prayed by the Des Moines bank.

I. An argument is made by J. H. Lewis, receiver and appellee, and J. J. Fleming, intervener and appellee, that the Des Moines bank is not entitled to have the assets marshaled for the reason that it did not pray for such relief. It is contended by the Des Moines bank that it is entitled to have the assets marshaled as follows: First, that the partnership assets shall be applied on its claim as well as on the claims of other partnership creditors; and, second, that the individual assets of the partner Murray shall be applied on its claim to the exclusion of the partnership creditors. There are no creditors of the partner Murray as an individual, except the Des Moines bank.

Careful consideration has been given to the appellees' contention that the pleadings are insufficient to entitle the Des Moines bank to a marshaling of the assets, and it is found that the same is without merit. Not only did the Des Moines bank ask that its claim be allowed against both the partnership and the property of the individual partners thereof, but likewise the Des Moines institution prayed for general equitable relief. In his answer to the claim of the Des Moines bank, the receiver declared that it had no interest in the individual property of the partner Murray except as a partnership creditor. Furthermore, the receiver denied that the Des Moines bank had any equities in the individual or partnership property except to participate ratably as a partnership creditor. To that answer the Des Moines bank filed a reply in which it asked that its claim be allowed as preferred against the individual estate of W. B. Murray.

During the trial the parties adopted the theory that the Des Moines bank's pleadings entitled it to a marshaling of the assets. The district court considered the question of marshaling of assets and decided the case accordingly. Under all the circumstances, then,

including the pleadings and the theory of the trial, it is impossible for the appellees to now successfully contend that the Des Moines bank's claim did not embrace the prayer for marshaling of assets.

II. This court on many former occasions has held that under proper facts and circumstances a party to an equity suit may be entitled to have the assets of a partnership and an individual partner duly marshaled.

Speaking generally, the creditors of an insolvent partnership, so far as the partnership property is concerned, in equity have preference thereto over creditors of the individual members of the firm. Midland National Bank v. Douglas, 199 Iowa 1190, local citation 1193; Hirsch, Wickwire Co. v. Denison Clothing Company, 158 Iowa 117; Budd v. King, 83 Iowa 97; Aultman & Co. v. Fuller, Williams & Company, 53 Iowa 60; Gillaspy v. Peck, 46 Iowa 461; Cox v. Russell, 44 Iowa 556; City of Maquoketa v. Willey, 35 Iowa 323; Switzer v. Smith & McGowan, 35 Iowa 269; Hubbard v. Curtis, 8 Iowa 1; Stout v. Fortner and White v. Speers, 7 Iowa 183; 20 Ruling Case Law 1048, Sec. 290.

Each partner has a right to insist that the firm property be first applied to the payment of firm debts and liabilities. See cases above cited, and 47 Corpus Juris 911, Sec. 401; Poole, Gilliam Co. v. Seney, 66 Iowa 502. Therefore, it is the general rule, under ordinary circumstances, that the separate creditors of the members of a firm can seek payment of their claims only from the surplus of the partnership property remaining after the satisfaction of partnership debts and liabilities. Poole, Gilliam Co. v. Seney (66 Iowa 502), supra; 47 Corpus Juris 918, Sec. 409.

On the other hand, the separate creditors of each partner in equity may be first paid out of the separate property of such partner before the partnership creditors can satisfy their claims from said individual property. Gillaspy v. Peck (46 Iowa 461), supra; Miller v. Clarke, 37 Iowa 325; Budd v. King (83 Iowa 97), supra; Hirsch, Wickwire Co. v. Denison Clothing Company (158 Iowa 117), supra; Hubbard v. Curtis (8 Iowa 1), supra; 47 Corpus Juris 908, Section 397. In the case at bar, as before said, the Des Moines bank is the only individual creditor of the partner Murray.

But the appellees contend that the Des Moines bank cannot participate in Murray's property to the exclusion of the partnership creditors, because a partnership obligation is personal against the partner as well as against the firm. This court has held that the

liability of a partner for the debts of the partnership is a primary obligation. Boeger & Buchanan v. Hagen, 204 Iowa 435; Williams v. Schee, 214 Iowa 1181. Nevertheless, that fact does not prevent the marshaling of assets as prayed by the Des Moines bank. The creditors of the firm extended credit to the firm, while the creditors of the individual extended credit to him. Moreover, a partner, as before seen, has a right in equity to compel the payment of firm debts from the firm properties. Likewise, such partner has a right to have his own individual debts paid from his individual property before firm creditors may partake thereof. See In re Assignment of Carter & Moody, 98 Iowa 261; In re Peck, 99 N. E. 258 (New York).

Consequently, if Murray is bound under the guaranty contract before named, under the rule above announced the Des Moines bank may share in his individual property to the exclusion of partnership creditors.

■ III. It is argued by the appellees, however, that Murray is not liable on the written guaranty. This argument is based upon the propositions: First, that the instrument was signed on Sunday; and, second, that it was altered after the same had been signed by Murray.

The contention is made that Murray signed the instrument on Sunday, but, if he did so, he authorized its delivery to the Des Moines bank on Monday. Hence the guaranty agreement was delivered to the Des Moines bank on Monday. According to the record the instrument does not bear the date of Sunday, but rather, that of Monday; and the Des Moines bank, when receiving it, knew nothing of the fact that Murray claims to have signed it on Sunday. Accordingly there is no defense to the instrument on the theory that it was signed on Sunday. In no way did the Des Moines bank take part in the Sunday execution. Collins v. Collins, 139 Iowa 703; Bowlin Liquor Co. v. Brandenburg, 130 Iowa 220.

■ Murray, in the second place, testified, concerning his defense of alteration above named, that A. D. Simmons presented the guaranty instrument to him in blank, and when so doing stated that the amount of the guaranty was not to exceed $25,000 or $30,000. Upon that understanding Murray contends that he signed the instrument. As before said, it is claimed by the Des Moines bank that A. D. Simmons presented the completed instrument to it with the guaranty limit of $150,000 written therein. Because the com-

pleted instrument was thus presented to it, the Des Moines bank argues that it is not responsible for the previous purported representations about the amount alleged to have been made by A. D. Simmons to Murray. That is true, the Des Moines bank contends, because it knew nothing of, and had nothing before it to indicate, the alleged alteration of the instrument. But appellees argue that different inks appear upon the instrument, and that the blanks thereon were filled with ink like that used by the Des Moines bank.

A careful study has been made of this contention, and we are constrained to find that there is nothing in the record to indicate that the officers of the Des Moines bank knew, or had any indication, that the instrument was altered after being signed by Murray. There are many firms that use the same kind of ink. Assuming, without deciding, that Murray did sign the instrument in blank under the conditions contended by him, Simmons may have used the Des Moines bank's ink to fill the blanks without the knowledge of that institution. The officers of the Des Moines bank concerned all testified that the guaranty agreement was complete and regular when presented to them. Nothing appears in the record to contradict these statements. In view of the fact, then, that the instrument was complete and regular on its face when presented to the Des Moines bank, and that institution knew nothing of the alleged alteration, Murray is liable because he negligently signed the instrument in blank, delivered it to, and authorized A. D. Simmons to fill the blanks and make of the paper a valid, binding contract. When the paper was thus presented, the Des Moines bank knew of no defects therein and consequently had a right to rely thereon. As before said, the Des Moines bank did rely on the instrument as intended by Murray. Assuming, then, that A. D. Simmons so filled the blanks in the instrument that it became a guaranty for $150,000 rather than $25,000 or $30,000, as Murray claims the limit should have been, he nevertheless made the error possible. A. D. Simmons was the agent of Murray, and not of the Des Moines bank. Hence, if there is to be loss, Murray must bear the brunt of it; because such loss must fall upon him who, by negligence or lack of care, made it possible to happen or likely to occur.

Where, under the circumstances, one of two innocent parties must suffer loss, the one who makes such loss possible must bear it. Murray, under the record, made the loss possible. Therefore he must bear it. First National Bank v. McCartan, 206 Iowa 1036;

Monona County v. Gray, 200 Iowa 1133; Merchants National Bank v. Cressey, 164 Iowa 721; Benton County Savings Bank v. Boddicker, 117 Iowa 407; Sawyer v. Campbell, 107 Iowa 397; The Benton County Savings Bank v. Boddicker, 105 Iowa 548. That being true, Murray owes the Des Moines bank. So, under the circumstances, the Des Moines bank is a creditor of Murray individually.

Wherefore, under the rule above announced, the Des Moines bank has a right to have its claim allowed out of Murray's individual property to the exclusion of the partnership creditors.

IV. Not only is the Des Moines bank entitled to satisfy this debt out of Murray's individual property, but likewise it may partake of the partnership property, because the debt is a partnership obligation as well as an individual liability. The partnership obligation arose through the loan above described, and the individual liability arises through the guaranty agreement. Under the circumstances, then, the Des Moines bank, as before explained, may have its claim satisfied from Murray's individual property to the exclusion of firm creditors, and also partake of the partnership assets.

We said in In re Assignment of Carter & Moody, 98 Iowa 261, on page 269:

"That these notes are charges against the firm, and also against these persons as members thereof, and as individuals, does not change the fact of their individual liability, nor the order in which distribution should be made. These being co-partnership debts, these creditors have an undoubted right to share with other partnership creditors in the firm assets; and, being individual debts arising from individual obligations, they have the right to share with individual creditors in the individual assets, with preference therein over partnership creditors."

To the same effect see In re Peck (99 N. E. 258), supra; 47 Corpus Juris 910, Sec. 400; 20 Ruling Case Law 1041, Sec. 282; Bank of Reidsville v. Burton, 259 Fed. 218; Bowen v. Chapman, 150 Fed. 106. It has been said correctly that in the event of such double preference there should be applied on the claim, first, the pro-rata dividend from the partnership assets, and if the debt is not thereby satisfied, then the individual assets of the partners may be appropriated. 47 Corpus Juris 911, Sec. 400.

On the other hand, if and when the Des Moines bank's claim is satisfied out of the individual property of Murray, the partner-

ship creditors will be entitled to the remainder thereof. Of course, there should be credited on the Des Moines bank's claim any sums it has obtained through the collateral security pledged.

Wherefore, the judgment and decree of the district court must be, and hereby is, reversed.—Reversed.

EVANS, STEVENS, ÀLBERT, UTTERBACK, DONEGAN, and KINTZIN-GER, JJ., concur.