## D. WYGAL et al. v. S. G. BIGELOW.

1. CHATTEL MORTGAGE — *Mortgagee May Purchase — Fairness of Sale.* The mortgagee of a chattel may purchase at a sale under the mortgage; if he does purchase, the burden is on him to show fairness of his own sale.

2. ——— *Sale of Whole in a Lump, When Unfair.* If a large amount of the property included in a chattel mortgage consists of many different articles which could be easily and profitably offered for sale separately, or in lots or parcels suitable to the convenience of the bidders, a sale of the whole in a lump, or in two separate lumps, might in some cases be regarded as an unfair mode of sale, especially if it were shown that the property did not bring its actual or market value at the sale.

3. FRAUDULENT SALE *by Mortgagee — Remedy of Mortgagor.* When the mortgagee of a chattel takes possession of the mortgaged property upon default, and at a sale thereof unlawfully, fraudulently and unfairly buys in the property at a price greatly less than its actual or market value, and soon thereafter sells and disposes of large portions of the same, so that the property cannot be returned or redeemed, the mortgagor may maintain an action to recover the excess of the value of the mortgaged property over the amount of the debt secured by the mortgage, without the tender of the amount of the debt, or making payment.

4. UNFAIR SALE *by Mortgagee to Himself — Fraud — Accounting.* If a mortgagee takes possession of the mortgaged property after default in payment of the debt, and sells it without any foreclosure in the courts to himself unlawfully, fraudulently or unfairly, and if the same debt be secured by a mortgage on land as well as by the mortgage on the chattels, and the mortgagee commences an action to foreclose the real-estate mortgage, to recover a balance of the debt claimed to be due, the subsequent purchaser of the land from the

mortgagor has an equity to compel the mortgagee to apply the value of the chattels seized to the mortgage debt. The mortgagee in such a case must show that he acted fairly and in good faith in carrying out the terms of the mortgage, and if in becoming the purchaser at the sale he acted unlawfully, fraudulently, or unfairly, and has subsequently sold large portions of the chattels and thereby disabled himself from returning the same or of allowing a redemption thereof, he must account for the actual value of the chattels.

*Error from Miami District Court.*

On October 31, 1883, *D. Wygal & Son* being indebted to *S. G. Bigelow* for that amount, gave their five promissory notes for $3,236.19, with 10 per cent. interest. These notes were payable at different times, but they all became due by October 30, 1884. They were secured by a chattel mortgage on —

"One blacksmith shop, with all the tools and fixtures therewith connected; one wagon shop, with all the tools and fixtures therein contained, including engine, boilers, shaftings, belting, lathes, and all the tools and fixtures of every kind or nature used in connection with the business of wagon manufacture, situated on lots 1, 2, 3, 4, of block 30, in the city of Paola; also, all the wood-work, hubs, felloes, wagon-beds, wagons, and all the material for the same in whatever course of construction, and all iron, oils, turpentine, paints, and all material now on hand, or to be hereafter purchased in carrying on said business."

The first notes, amounting to $1,714.95, not having been paid when due, and S. G. Bigelow feeling himself insecure, demanded additional security, and on May 21, 1884, Sylvester Wygal and Carrie M. Wygal gave their mortgage of that date on lot 2, block 30, in Paola city, to S. G. Bigelow as additional security on the notes. These notes and interest remained unpaid, and in January, 1887, amounted to about $4,300. S. G. Bigelow then posted notices as required by law, and on January 28, 1887, purchased at the mortgage sale the chattel property mentioned in the mortgage, for $2,600. Shortly after said sale, February 8, 1887, Sylvester Wygal and Carrie M. Wygal conveyed lot 2, block 30, to N. H. Williams, subject to the mortgage previously given to S. G. Bige-

low.   On March 24, 1887, Bigelow commenced his action to foreclose the real-estate mortgage on lot 2, block 30, and to apply the proceeds (after paying a prior mortgage to Frank E. Williams) to the payment of the amount claimed to be due him. On April 22, 1887, N. H. Williams and Sylvester Wygal answered, setting up that on February 8, 1887, he bought the property, and that the mortgage of Vet Wygal and Carrie M. Wygal was given to secure $1,000, and no more.   On the same day Sylvester Wygal answered again with D. Wygal, setting up the chattel mortgage and an alleged sale of the chattel property at public sale; that the property was worth $6,000, and complained that the property was sold in bulk to Bigelow for $2,600.   They claimed they had been damaged in the sum of $3,400, and asked judgment for $2,000.   On April 22d, 1887, Carrie M. Wygal answered, and among other things said that on or about the 28th day of January, 1887, the plaintiff pretended to offer and sell at public sale all the personal property so taken by him into his possession, and bid in for himself and pretended to buy in a lump in two separate parcels all of the property; that the property so sold was before the sale invoiced at $6,241, after allowing a deduction of over 10 per cent.   Subsequently Carrie M. Wygal, D. Wygal, Sylvester Wygal and N. H. Williams filed, with the consent of the court, amended answers.   The answers were treated by the court below as if filed before the trial.   The answer of Williams among other things alleged:

"That about January 1, 1887, plaintiff and Sylvester Wygal invoiced the property described in the chattel mortgage, except the wagon shop and blacksmith shop, and after deducting from ten to fifteen per cent. from the value of the property agreed the actual value of the property was $6,240.16; that at the time, the balance due the plaintiff was about $3,600; that on the 28th day of January, 1887, the plaintiff took possession of all of the chattel property, which then belonged to D. Wygal and Sylvester Wygal, subject to plaintiff's lien described in the chattel mortgage, of the value of $6,500, and unlawfully and fraudulently converted the same to his own use, and has disposed of large portions of the same, and has

fraudulently refused to give D. Wygal and Sylvester Wygal credit for its true value, but instead of doing so, fraudulently gave them credit for only $2,600, when in fact D. Wygal and Sylvester Wygal should have had all of the notes returned to them by the plaintiff, canceled and paid by reason of the property being converted to the use of plaintiff, and the mortgage on said real estate should have been released; that these defendants say that there is no sum whatever due the plaintiff by reason of the execution and delivery of the mortgage to plaintiff."

The amended answer of D. Wygal and Sylvester Wygal alleged among other things—

"That on the 28th day of January, 1887, the plaintiff pretended to offer for sale and sold at a sale which before that time had been advertised as a public sale, the property mentioned in said chattel mortgage, which was of the value of $6,500; that previous to said pretended sale the plaintiff and defendant Sylvester Wygal had carefully invoiced all the property described in said chattel mortgage except the blacksmith shop and wagon shop, and had deducted from ten to fifteen per cent. from what they had agreed to be the actual value of said property, and the result of said invoice was that after making said deduction they found the aggregate value of said property, exclusive of said wagon shop and blacksmith shop, to be $6,240.16; that plaintiff and Sylvester Wygal were the only persons who knew the actual value of said personal property; that large numbers of persons were present January 28, 1887, at said pretended sale, ready, anxious and requesting the privilege of bidding upon various articles mentioned in said chattel mortgage and advertised for sale, yet plaintiff, relying upon the knowledge of the value of said property as agreed upon in said invoice, unfairly and fraudulently refused to permit any of said articles to be sold separately, but required the said blacksmith shop with all the tools and fixtures therewith connected, and the said wagon shop with all the tools and fixtures therein contained, including engine, boilers, shafting, belting, lathes, and all the tools and fixtures of every kind and nature and used in connection with wagon manufacture, to be offered in one lump or parcel; and there being no one present who desired to or could purchase the same in that way, the plaintiff made a bid therefor of $2,000, and no higher bid being made, a pretended sale was made to plaintiff at that time of

said property for the sum of $2,000, when its actual value was well known to plaintiff to be $5,000. Plaintiff then pretended to offer for sale all the wood-work, hubs, felloes, wagon-beds, wagons and all other materials for the same in whatever course of construction, and all iron, oils, turpentine, paints and other material on hand for construction of wagons, of the value under said invoice, taken and agreed upon as aforesaid, of $1,500, in one lump or parcel, and refused to permit persons who were present, anxious and requesting the privilege to bid upon portions of the same, to do so, and required any person who desired to bid upon any portion of said material to bid upon all of said material in bulk or in one lump, thereby depriving those who desired to purchase portions of said property of the privilege of so doing; and there being no person who desired to purchase said property as the same was offered, plaintiff unlawfully and fraudulently pretended to buy the same for the sum of $600, well knowing at the time that its actual value was $1,500. That at the time of said pretended sale of said property described in said chattel mortgage, they were the owners of the same subject to the lien of plaintiff as above stated, and that by the unreasonable, unjust, unlawful and fraudulent manner he caused said pretended sale to be made, by which he has converted the same to his own use, and has sold and disposed of a large portion of the same, he has ruined their business, which it is impossible now to restore, and that they have been greatly damaged, in the sum of $3,900."

When the case was called for trial at the June term, 1887, and a jury had been impaneled, the execution of the notes and the mortgage sought to be foreclosed not having been denied, it was held that the defendants below had the burden of the issues, and the right to open the case, and introduce evidence, which they proceeded to do; whereupon plaintiff below objected to the introduction of any and all testimony to sustain the averments of the answers and amended answers, for the reason and upon the ground that they did not state facts sufficient to constitute a defense to the plaintiff's petition. This objection was sustained, and judgment rendered for plaintiff below for the balance claimed to be due on the notes, and for foreclosure as prayed for in his petition. All the defendants excepted, and bring the case here.

31—42 KAS.

*W. T. Johnston,* and *Selwyn Douglas,* for plaintiffs in error.
*Brayman & Stevens,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Upon the trial of this case in the court below, the burden of the issues, under the pleadings, was upon the defendants.    The plaintiff objected to the introduction of any testimony to sustain the answers, and this objection having been sustained, judgment was rendered for $1,009.92, the balance claimed to be due to the plaintiff upon the notes of D. Wygal & Son, and for a foreclosure of the mortgage of Sylvester Wygal and wife on lot 2, in block 30, in Paola, to pay the judgment and costs.    All the answers must be treated as if filed before the trial, as the court below so treated and considered them.    The principal question in the case is, can the defendants, under the allegations of the answers, recover damages justly proportioned to the injuries alleged by them, or can relief only be granted to them upon payment or tender of payment of the mortgage debt?    If it appeared from the pleadings that the plaintiff still held in his possession or under his control the personal property described in the chattel mortgage, then perhaps payment of the debt or tender of payment by defendants ought to precede any claim for damages or any return of the property.    But as it is alleged that the personal property was unlawfully, fraudulently and unfairly converted to the use of the plaintiff, and that he has disposed of large portions of the same, the defendants cannot redeem on account of the conduct of the plaintiff.    The chattels cannot be returned, as the plaintiff has disposed of large portions thereof, and the defendants, the mortgagors, are entitled, if the allegations of their answers are true, for judgment against the plaintiff, the mortgagee, for the excess of the value of the personal property over the amount of the notes and interest. (*Leach v. Kimball,* 34 N. H. 568; *Hungate v. Reynolds,* 72 Ill. 425.)

Some of the courts hold that relief can be granted only to

a mortgagor upon payment or tender of payment of the whole mortgage debt, and then, although the mortgagee has disposed of the property, a court of equity will give relief by decreeing damages. But in this state the distinction between courts of equity and courts of law has been abolished, and it was useless and unnecessary to tender any payment of the mortgage debt, if the plaintiff has unlawfully, fraudulently and unfairly converted to his own use the personal property of the defendants of a much greater value than the debt, and subsequently to such conversion has disposed of large portions of the property, so as to be disabled from returning the same, or of allowing any redemption thereof.

In *Case v. Boughton*, 11 Wend. 106, the court say, that the property being of sufficient value to satisfy the debt, no further act besides taking possession was necessary to constitute payment. In this case, if the property taken by the plaintiff was of sufficient value to satisfy his debt, and if it has been unlawfully, fraudulently and unfairly purchased by him, no judgment ought to be rendered for any balance claimed upon the notes. The personal property was placed in the mortgagee's hands for the purpose of being appropriated for the satisfaction of the notes, and the mortgagors had the right to have it faithfully and fairly applied for that purpose. If it was not so appropriated, the mortgagee is liable.

In this state, we think that the mortgagee of the chattel may purchase at a sale under the mortgage, but the relation which the mortgagee holds to the debtor imposes on him the observance of fairness and good faith. If he abuses the power which he holds and becomes the purchaser unfairly and dishonestly, he will be required to account to the mortgagor therefor. (Herman, Chat. Mort., § 219; *Jones v. Franks*, 33 Kas. 497.)

"If the mortgagee carries out in good faith the terms of the agreement, and makes the very disposition which he has contracted to make, and has broken no contract, he has been guilty of no bad faith to the mortgagor, and ought to be chargeable with only the actual proceeds of the property thus disposed of by him." (*Denny v. Van Dusen*, 27 Kas. 437.)

The unfair or fraudulent sale of mortgaged property by a mortgagee should not and will not defeat or extinguish the rights of the mortgagor. The mortgagee has no right by any unfairness to sacrifice the property and deprive the mortgagor of the surplus over the debt which by a fair and honestly conducted sale might arise. If the property consists of many different articles which can be easily offered for sale separately, or in lots or parcels, a sale of the whole in a lump, or in two lumps, in some cases might be regarded as an unfair mode of sale, especially if it were shown that the property brought much less at the sale than its actual value. (Jones, Chat. Mort., 3d ed., § 797; *Hungate v. Reynolds*, 72 Ill. 425.) We cannot say, as a matter of law, upon the allegations in the answers, that the property was wrongfully and unfairly disposed of; nor can we say that the property was sold fairly and in good faith according to the terms of the mortgage. These are matters for a jury under proper instructions from the trial court. The defendants were entitled to have a fair and *bona fide* sale. The trial court should have permitted the testimony to go to the jury to determine whether this was done or not. Upon the issues in the case, it was important to determine whether the sale was made by the mortgagee in a manner calculated to produce the best price for all the articles sold. As all the testimony offered in support of the answers was rejected, no opportunity was permitted the defendants to show that the sale was unlawful, fraudulent, or unfair. In this the court committed error.

We are referred to *Hamlyn v. Boulter*, 15 Kas. 376, that the defendants' answers were insufficient because they did not allege the payment of the debt or the tender thereof. In that case it does not appear that the defendant unlawfully, fraudulently, or unfairly disposed of the mortgaged property. It does appear, however, from the opinion, that Hamlyn was surety for Boulter; that he held a chattel mortgage upon property as security, and all the court decided in that case was, that no action could be maintained by Boulter against him for the conversion of the mortgaged property until he had

been fully repaid, or indemnified for his liability as surety. This, and nothing more.

In accordance with the usual practice of this court, the petition in error is allowed to be amended as requested in the motion on file.

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.