CHARLES HEITMAN v. WM. H. GRIFFITH *et al.*

1. PARTNERSHIP — *Power of Manager to Borrow Money* — *Securities*. The general manager of the business of a partnership, having power to borrow money and to give the necessary securities therefor, may borrow money from his wife and give the necessary securities therefor, and the same will be upheld in equity where the entire transaction is honest and in good faith, and where in equity the same should be upheld.

2. FACTS, *Stated* — *Valid Chattel Mortgage*. And where at the time when the money is borrowed a promissory note for the amount loaned is given in the firm-name to the wife, and also at the same time it is understood that if the money should not soon be returned to her she should also have a chattel mortgage on the property of the firm to secure the debt, and in about twenty-two days thereafter the chattel mortgage is executed, *held*, that as against the firm or a member thereof the chattel mortgage is valid.

*Error from Shawnee District Court.*

THE case is stated in the opinion.

*Overmyer & Safford*, for plaintiff in error.

*G. N. Elliott*, and *R. A. Friedrich*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Shawnee county on October 12, 1886, by Charles Heitman against Wm. H. Griffith and Sarah M. Griffith, who were husband and wife, for the purpose of dissolving a partnership known as "W. H. Griffith & Co.," annulling a chattel mortgage purporting to have been executed by the firm of W. H. Griffith & Co. to Mrs. Griffith, for an accounting between the partners, and for the appointment of a receiver to take charge of the partnership affairs. The business of the firm consisted in operating a planing mill, dressing lumber, etc. A provisional receiver was appointed at the commencement of the action. The defendants answered separately. Mrs. Griffith in her answer set forth, among other things,

that she had no interest in the partnership except that the firm owed her the sum of $878.86, and interest due on a promissory note secured by a chattel mortgage on the property of the firm.   The plaintiff replied to both answers by filing a general denial.   The case was tried on June 27, 1887, before the court without a jury, virtually with regard to the truth of Mrs. Griffith's answer, and the court found generally in favor of the defendants, and that the firm of W. H. Griffith & Co. owed Mrs. Griffith the sum of $957, principal and interest, due on the aforesaid note and chattel mortgage, and that the same was a first lien upon the mortgaged property, and rendered judgment in accordance with these findings, and ordered that the receiver pay and satisfy the judgment out of the funds of the copartnership; and the plaintiff, as plaintiff in error, brings the case to this court for review.

The questions in dispute in this case are and have been principally questions of fact and not questions of law; and with reference to these questions of fact the court below found in favor of the defendants and against the plaintiff upon sufficient evidence, and hence there is but little for this court to decide. It appears that about nineteen years before the trial in the court below, Mr. and Mrs. Griffith were married.   Neither at the time had any property, but since that time and up to the trial of this case, both used their best endeavors to accumulate property, and they together accumulated a considerable amount.   Mrs. Griffith never carried on any separate business, and never obtained any property except what she obtained through the joint exertions of herself and husband, and set apart to her by the consent of both.   During the aforesaid nineteen years they had owned several pieces of real estate, and the titles to some of them were placed in her name, and to others in his name; and all this was done in good faith and not for the purpose of defrauding any person.   It does not appear that either of them was ever insolvent or embarrassed financially; and from anything appearing in the case, either of them could now easily pay any debt or debts which he or she may owe.   About nine or ten years before the

trial, a piece of real estate was sold which belonged to Mrs. Griffith, and with the proceeds thereof certain other real estate, at or near the corner of Second and Jackson streets in the city of Topeka, was then purchased, and the title to this last-mentioned real estate was placed in the name of Mrs. Griffith, and it belonged to her. About May, 1886, this property was sold, and in August, afterward, a portion of the proceeds was loaned by Mrs. Griffith to the firm of W. H. Griffith & Co. to pay a debt which the firm owed to Hall & Brown of St. Louis, Mo., for machinery, etc., purchased by the Topeka firm from the St. Louis firm, and which St. Louis debt was past due and secured by a chattel mortgage on the property of the Topeka firm. Prior to this time, and about June or July, 1885, a copartnership was organized, consisting of Griffith and L. T. Rench. Afterward, and about December 1, 1885, Heitman became a member of the copartnership, paying into the copartnership $1,000 for the privilege of becoming a member; and written articles of copartnership were drawn up and signed by all the parties. Griffith acted as the general manager of the business affairs of the firm. About June 8, 1886, Rench sold out his interest in the copartnership to Griffith, and after that time the firm consisted of Griffith and Heitman. About August 15, 1886, Griffith borrowed the amount of the aforesaid promissory note from Mrs. Griffith, and with the money got from her, paid the aforesaid debt owing by the firm to the St. Louis parties, and gave to Mrs. Griffith the aforesaid note, dated August 15, 1886, executed by Griffith in the name of the firm. It was understood at the time that this money was to be repaid to Mrs. Griffith in a few days, or that she should have a chattel mortgage on the property of the firm to secure the note. The note not being paid, the chattel mortgage aforesaid was executed by Griffith in the name of the firm on September 6, 1886, to secure the payment of the note, and this chattel mortgage was deposited in the office of the register of deeds on October 12, 1886. Under the findings of the court below all these transactions were in good faith, and no

fraud was committed or intended to be committed as against Heitman or any other person by either Griffith or his wife. Griffith, in his capacity as general manager of the business affairs of the firm, had at several times, with the knowledge of the plaintiff, transacted other business matters of like character with this; that is, he had borrowed money at different times and given notes or other securities, and with such money had paid the debts of the firm or had used it in carrying on the business of the firm, and had afterward repaid the borrowed money. But it is claimed that this transaction between Griffith, representing the copartnership on the one side and his wife on the other side, is void for the following reasons:

I. It is claimed that the utmost good faith is due from every member of a partnership toward every other member thereof, and that good faith requires that no partner shall obtain any private advantage at the expense of the firm. This of course is correct. The plaintiff also says that "every husband is interested in his wife's property in innumerable ways; it adds to his credit, importance, comfort, and power;" and that if she should die first, he would inherit one-half of her estate in any event, and might inherit the whole of it. This is also correct. But from these things the plaintiff goes farther, and claims that Griffith as the manager of the business of the firm could not have any dealings with his wife without gaining some private advantage at the expense of the firm, and that this private advantage would have the effect to destroy the validity of all such dealings. This we do not think is correct. The remote interest which a husband has in his wife's property cannot prevent him from having business dealings with her, although he may be acting for a partnership of which he is a member, provided, of course, that such dealings are honest and in good faith; and such dealings will be upheld and sustained in equity whenever it is equitable that they should be upheld and sustained. This action is itself an equitable action, and as the plaintiff seeks equity, he should be willing that equity should be extended to others. Now it is certainly

equitable, where the money of Mrs. Griffith has gone into the partnership funds for the purpose that it should be used, and where it has been in fact used, to pay off and discharge a partnership, past-due debt, and has also relieved the partnership property from a chattel mortgage already past due, that she should have her money returned to her; and as it was understood at the time when she loaned the money that if it was not repaid to her in a short time she should have a chattel mortgage on the property of the firm to secure the debt, and as she afterward obtained the chattel mortgage, it is certainly equitable that she should have a lien upon the mortgaged property. Her mortgage was simply placed upon the same property which had been relieved from the previous chattel mortgage by the payment of her money.

II. It is also claimed that the mortgage is void for the reason that it was given for a preëxisting debt. In other words, the money was loaned, the debt created and the note given on August 15, 1886, and the mortgage to secure the debt was not executed until September 6, 1886. This mortgage, however, was given in pursuance of an agreement, made at the time when the money was loaned, that such should be done in case the money was not soon refunded; but even if no such agreement had ever been made, the ground for claiming the mortgage to be void would hardly be sufficient. (*Draper v. Cowles*, 27 Kas. 484.) Before the plaintiff or anyone else should be allowed to say that the mortgage should be held void, he should refund to Mrs. Griffith her money.

The judgment of the court below will be affirmed.

All the Justices concurring.