ANDREW HENRY V. JAMES VLIET ET AL.

[FILED OCTOBER 7, 1891.]

1. **Chattel Mortgage**: CONSIDERATION: A PRE-EXISTING DEBT
   is a valuable consideration for a chattel mortgage and protects
   the mortgagee to the same extent as had he paid a new consid-
   ation.

2. ———: ———: THE RELEASE OF AN INDORSER or surety of a
   promissory note, on a pre-existing debt in consideration of a
   chattel mortgage on the goods of the maker, *held*, to be a valu-
   able consideration for the mortgage.

ERROR to the district court for Douglas county. Tried
below before GROFF, J.

*Cornish & Robertson*, for plaintiff in error, cited, as to
the pre-existing debt as a consideration, cases referred to
in the opinion. As to the release of the indorser: *Smith v.
Worman*, 19 O. St., 150; *Clark v. Barnes*, 34 N. W.
Rep. [Ia.], 419; *Gilchrist v. Gough*, 63 Ind., 576; *Craft
v. Russell*, 67 Ala., 9; *Soule v. Shotwell*, 52 Miss., 238; *Gib-
son v. Connor*, 3 Kelly [Ga.], 47; *Bank v. Wallace*, 12 N.
E. Rep. [O.], 439; Daniel, Neg. Inst., sec. 829*a*.

*Hall & McCulloch, contra:*

Nine state courts and the federal supreme court hold
that a pre-existing debt does not make the one securing it
a *bona fide* purchaser, as against the prior rights. (*Farley
v. Lincoln*, 51 N. H., 577; *Root v. French*, 13 Wend. [N.
Y.], 570; *Phelps v. Fockl*, 61 Ia., 340; *Pancoas v. Duval*,
26 N. J. Eq., 445; *Copleand v. Manton*, 22 O. St., 399;
*Banks v. Long*, 79 Ala., 319; *Sargent v. Strum*, 23 Cal.,
259; *Hohl v. Lynn*, 34 Mich., 360; *Gest v. Packwood*,
34 Fed. Rep. [Ore.], 374; *Straughan v. Fairchild*, 80 Ind.,
598; *Bank v. Bates*, 120 U. S., 556.) There are three
states holding the contrary. (*Kranert v. Simon*, 65 Ill.,

344; *Shufeldt v. Pease*, 16 Wis., 689; *Gibson v. Moore*, 7 B. Mon. [Ky.], 95.)    *Goodman v. Simonds*, 20 How. [U. S.], 343, and *McCarty v. Root*, 21 Id., 423, relate to commercial paper.    As to the release of the indorser: *Morse v. Godfrey*, 3 Story [U. S.], 364.

COBB, CH. J.

The defendants in error brought their action for the possession of sixty barrels of gasoline, 750 cases of 100 flash oil, and 300 cases two-fifths 150 W. W. oil, laying damages at $500.

The defendant below made a general denial.

There was a trial to a jury October 29, 1887, with findings that the plaintiffs were entitled to possession; that the defendant was indebted to the plaintiffs $757.52½ for the goods with damages for detention of five cents.    Motion for new trial was overruled and judgment entered on the verdict.

The plaintiff in error claims that on July 21, 1886, L. A. Stewart & Co., of Omaha, executed a chattel mortgage upon their stock of oils and gasoline, including the property in this action, to secure their commercial obligations.

| Obligations. | Dated. | Due. | Amount. |
| --- | --- | --- | --- |
| First note........ | April 30, 1887.............. | Ninety days... | $5,000 00 |
| Second note.... | June 10, 1887.............. | Ninety days... | 5,000 00 |
| Third note...... | June 22, 1887.............. | Ninety days... | 2,500 00 |
| Fourth note..... | June 25, 1887.............. | Ninety days... | 2,500 00 |
| First draft...... | July 19, 1887, on W. R. Stewart, Jr.............. | .................... | 850 00 |
| Second draft.... | July 20, 1887, on W. R. Stewart, Jr.............. | .................... | 2,617 50 |
| Third draft...... | July 21, 1887, on W. R. Stewart, Jr.............. | .................... | 1,490 00 |
| Amounting to.. | .................................. | .................... | $19,957 50 |

It is claimed that the notes, except that dated June 25, 1887, were renewals of prior indebtedness, the amount of

$10,000 of which was first loaned January 2, 1886; that
the drafts were deposited, as cash, in the Bank of Omaha
(owned by plaintiff in error), and that A. L. Stewart &
Co. were allowed to draw against them as cash deposited;
and all of which were protested for non-acceptance at Des
Moines, Iowa. That at the date of the mortgage there
was in the Bank of Omaha to the credit of L. A. Stewart
& Co. $274.50; that the notes were signed by L. A. Stew-
art & Co., and by W. R. Stewart, Jr.; that on July 20,
1887, W. R. Stewart, Jr., of Des Moines, came to Omaha
and insisted that L. A. Stewart & Co. should secure their
indebtedness to the bank, upon which he was liable as
surety. The mortgage was thereupon given, and in con-
sideration of the entire indebtedness being secured, W. R.
Stewart, Jr., was released.

It is claimed by the adverse party that the goods in con-
troversy were sold to L. A. Stewart & Co. on condition
that they were to be paid for in cash on delivery, or a
secured note, or draft accepted by some bank, which con-
ditions were not complied with; that the goods arrived at
the Omaha freight depot on July 19, 1887, were taken out
the same day into the warehouse of L. A. Stewart & Co.,
leaving $830 charges for freight unpaid; that on the next
day W. R. Stewart, the surety, appeared and was released,
the mortgage was executed on the property thus secured in
possession, and on the next day L. A. Stewart & Co. were
bankrupts and insolvent.

It is further claimed that in October, 1886, this firm
represented, for the purpose of obtaining the goods on
credit, that it was worth $25,000 above liabilities, and was
prosperous, which representations were false and made for
fraudulent purposes; that the cashier of the bank of Omaha
on October 22, 1886, wrote to the defendants in error that
"he considered Mr. Stewart reliable, and thought he had
$25,000 in his business."

It is not in evidence that the plaintiff in error was either

a party to these representations, or that he had notice of the conditions of sale to the failing purchasers. The letter of the cashier was dated nine months prior to the purchase and delivery of the mortgaged property, and if not too remote from the final transaction to have influenced it, there is no sufficient evidence to impeach the truth of the letter or the responsibility of the purchaser at that date.

The first question of error presented is, to what extent a pre-existing debt becomes a valuable consideration within the rule of law which gives protection to a *bona fide* purchaser for value? On the trial the court, of its own motion, instructed the jury:

"IV. That if the defendant took a chattel mortgage upon the goods as security for an antecedent debt, and parted with nothing on the faith of his mortgage or purchase, he would not be, as against the plaintiffs, a *bona fide* purchaser for value," to which the defendant excepted, and requested the court to instruct the jury that " A pre-existing debt is a valuable consideration for a mortgage, and protects the mortgagee to the same extent that he would be protected if he had paid a new consideration at the time the mortgage was given."

This question was fully considered in the case of *Turner, Frazer & Co. v. Killian*, 12 Neb., 580, wherein attaching creditors sought to impeach the validity of a chattel mortgage given to secure a previous debt. The court held "As to attachment creditors of a mortgagor a pre-existing debt, already due, is a good consideration for a chattel mortgage, and protects the mortgagee to the same extent as would a new consideration given at the time of making the mortgage." The court also held that the question of fraudulent intent in the giving of a chattel mortgage was, in all cases, one of fact, and must be raised by suitable pleadings. (Sec. 20, p. 491, Comp. Stats. 1891.) The voluminous testimony does not tend to raise the presumption that the plaintiff in error was a party to a fraudulent mortgage, or to the insolvency of the mortgagor.

In the case of *Manning v. Cunningham*, 21 Neb., 291, it was held that "A chattel mortgage executed by a mortgagor in possession as owner, although legal title was not to pass to him until the goods were paid for, where such contract of conditional sale was not filed for record, will take precedence over the secret lien of the party claiming to be the real owner of the property."

It does not appear from the evidence that any advantage whatever against the vendor and shipper of the property was taken by the other party to this suit. If the condition of sale was made, as alleged, the defendants in error had ample and customary means of protection in requiring the fulfillment of that condition on delivery of the goods.

The mortgage to the plaintiff in error was therefore a valid instrument, paramount to the vendor's unfortified lien, if the consideration was sufficient.

It is not claimed that the notes and drafts of the mortgagor were supposititious, and it is not denied that the plaintiff in error was a *bona fide* creditor on that account. At the September term of the supreme court of Illinois, in 1872, in the case of *Kranert v. Simon et al.*, 65 Ill., 344, it was held by Judge Breese, and a full bench, that "Where a *bona fide* creditor of one who purchased goods and had possession by means of fraudulent representations took a mortgage without notice as to the fraud, that he was to be regarded as an innocent purchaser and could not be deprived of his rights under his mortgage by a subsequent knowledge of the fraud of his debtor. And the debtor having sold and delivered the goods so purchased, to his creditor, in payment of a pre-existing debt, who accepts them in good faith without notice of the fraud, the creditor will be protected as an innocent purchaser against any claim of the original owner to the same extent he would be had he paid a new consideration for the goods."

If this decision, in an action of replevin, has hitherto

been maintained, it infolds the present controversy and would seem to be decisive of it. The questions are the same, and the parallel is complete, only lacking the element of fraud. And we also find that a considerable number of the states which have considered the question in their higher courts, have decided in harmony with the doctrine of *Turner v. Killain, supra; Butters v. Haughwout,* 42 Ill., 18; *Paine v. Benton,* 32 Wis., 491; *Shufeldt v. Pease,* 16 Wis., 659; *Frey v. Clifford,* 44 Cal., 335; *Gassen v. Hendrick,* 16 Pac. Rep. [Cal.], 242; *Knox v. McFarran,* 4 Col., 586; Hermann, Chat. Mort., sec. 52; Jones, Chat. Mort., sec. 81; *McMurtrie v. Riddell,* 13 Pac. Rep. [Col.], 183; *Clark v. Barnes,* 34 N. W. Rep. [Ia.], 419; *Goodman v. Simonds,* 20 How. [U. S.], 343; *Bank of Republic v. Carrington,* 5 R. I., 515; *Fair v. Howard,* 6 Nev., 304; *Gibson v. Moore,* 7 B. Mon. [Ky.], 95; *Hayner v. Eberhardt,* 15 Pac. Rep. [Kan.], 168; *Laubenheimer v. McDermott,* 6 Pac. Rep. [Mont.], 344.

We have no hesitation in agreeing to the rule that a pre-existing debt does constitute a valuable consideration appliable to commercial obligations. Assuming that the plaintiff in error is unaffected with the equities between the defendant in error and the mortgagor of the goods in controversy, without notice and without evidence of the vendors' lien, we are of the opinion that the chattel mortgage, under these circumstances, was a lawful security to the plaintiff in error for the notes and drafts to become due. It would appear to be for the benefit of trade to give as extended a credit as practicable to the circulation of negotiable paper, that it may pass not only for new purchases, upon transfer, but also as security for pre-existing debts, as in the present instance. The creditor is thus enabled to secure his debt, to extend the credit of the debtor, or forbear legal proceedings to enforce its collection. The debtor has the advantage of using his negotiable securities as the equivalent of money. We can see no substantial reason, therefore, why an adverse ·

rule should apply to commercial paper, as security, to that of chattel property.

It may be said that a part of the consideration of the mortgagor was the release of a surety on the notes, that the goods from the owner in possession were not acquired by the plaintiff in error without an equivalent at the time of the transaction, constituting a single feature of the antecedent debt. This view was not rejected by the trial court, but the seventh instruction stated that "if the jury shall find that if the defendant released W. R. Stewart, Jr., from the promissory notes which the chattel mortgage, upon the goods in question and others, was given to secure, with the understanding that the mortgagor should be held, and that the mortgage was given, in consideration of the release, then the defendant did, at the time, part with a valuable consideration in such release for the mortgage, and was an innocent purchaser, for value, of the goods, unless it be found that the defendant had knowledge of the fraudulent intent of the mortgagor at the time of the purchase of the goods."

It is not clear from the evidence of record that the plaintiff in error had knowledge of any fraudulent intent of the mortgagor in the purchase of the goods. The suspicious circumstances presented are not proof of fraud, and are not inconsistent with an honest intent and purpose on the part of the plaintiff in error in all the transactions detailed in evidence.

"Fraud is never to be presumed, but must be clearly proved in order to entitle a party to relief on the ground that it has been practiced upon him." (*Clark v. Tennant,* 5 Neb., 549.)

"Fraud will not be imputed where the circumstances and facts upon which it is based may consist with honesty of purpose." (*Clemens v. Brillhart,* 17 Neb., 335.)

Other errors of trial are presented and argued by counsel, not deemed necessary to follow here in order to reach conclusions.

The fourth instruction of the court to the jury is held to have been erroneous, misleading, and prejudicial, for which the judgment must be reversed, independent of other errors assigned.   The cause will be remanded to the district court to be proceeded with in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.