FRANK SMITH, Appellant, v. SMITH BROTHERS *et al.*, Appellees, and Six Other Cases. *

| 87 | 93 |
|----|-----|
| 89 | 541 |
| 87 | 93 |
| 93 | 499 |
| 87 | 93 |
| 104 | 528 |
| 104 | 663 |
| 87 | 93 |
| 106 | 654 |
| 87 | 93 |
| e128 | 591 |
| 87 | 93 |
| 142 | 138 |
| 87 | 93 |
| 143 | 702 |

1. **Partnership**: ASSETS: RIGHTS OF FIRM AND INDIVIDUAL CREDITORS. The defendant firm, when it was insolvent, executed to the plaintiff a mortgage upon its stock of goods to secure the payment of debts contracted by the several partners prior to the organization of the firm. The plaintiff had no knowledge of the insolvency of the firm, and his mortgage was taken in good faith for the security of a valid indebtedness. *Held,* that the plaintiff's mortgage was superior to the liens of subsequent attachments by existing creditors of the firm, at the time the mortgage was executed.

2. ———: ———: ———. A mortgage made by an insolvent firm upon its stock of goods to secure a pre-existing indebtedness, part of which is owing by one of the partners, and the other part by the firm, is, when made and accepted in good faith, superior to the subsequent attachments of existing creditors of the firm.

*Appeal from Audubon District Court.*—HON. N. W. MACY, Judge.

FRIDAY, JANUARY 20, 1893.

- A REHEARING having been granted, this case is again before us for consideration. The former opinion will be found in 50 N. W. Rep. 64.

* The opinion filed upon the first submission of this case was withdrawn by the court, and for that reason is not published in these reports. It may be found in 50 N. W. Rep. 64.—REPORTER.

This is an action in equity to foreclose a certain chattel mortgage executed by the defendant firm, Smith Bros., composed of Ernest Smith and O. D. Smith, to the plaintiff, on their stock of merchandise, and for a decree declaring the same superior to a mortgage to the defendant Mary Archer, and to the attachments of Warfield & Howell, Blotcky Bros., Spangler, Eroe & Co., Doggett, Bassett & Hills Company, Gilman & Ruhl and Turner & Jay, against Smith Bros. The plaintiff intervened in the action brought by these attaching creditors, setting up his mortgage as superior to their attachments; and they severally intervene in this action, and deny the validity of said mortgages, and claim their attachments to be superior thereto. Gilman & Ruhl and Turner & Jay, at the time they commenced their actions, deposited two hundred and sixty-two dollars, and seventy-five cents, the amount of the mortgage to Sarah Archer, with the clerk of the court, as authorized by chapter 117, Acts 1886 (Miller Code, p. 1033), and gave notice that they would contest the validity of said mortgage. They contend that if said mortgage is sustained they are entitled to be subrogated to all the rights of Sarah Archer thereunder. The other attaching creditors deny their right to subrogation. The several cases were consolidated and submitted together. Decree was entered in favor of the plaintiff against Smith Bros. and Ernest and O. D. Smith, on default. Upon the hearing of the issues, decree was entered, declaring the plaintiff's mortgage void as to the creditors of Smith Bros., from which the plaintiff appeals. It was further decreed that the mortgage to Sarah Archer was valid, and a first lien, and that Gilman & Ruhl and Turner & Jay were entitled to be subrogated to her rights under said mortgage; that the attachments be dissolved as to Gilman & Ruhl and Turner & Jay; that the property be sold under the attachment of Gilman & Ruhl, and the proceeds applied as follows:  To

Sarah Archer, or to Gilman & Ruhl for her, the amount required to satisfy the Archer mortgage, and to the attaching creditors in the following order: Gilman & Ruhl, Turner & Jay, Warfield & Howell, Blotcky Bros., Spangler, Eroe & Co., Doggett, Bassett & Hills Company, and any balance to the plaintiff. From this part of the decree, Warfield & Howell, Spangler, Eroe & Co., and Doggett, Bassett & Hills Company appeal. The attachments of these appellants and of Blotcky Bros., were sued out and levied in the order named —Blotcky Bros. being second—on January 5, 1889, and the attachments of Gilman & Ruhl and Turner & Jay, in the order named, on January 10, 1889, subject to said prior attachments. Blotcky Bros. do not join in the appeal. On plaintiff's appeal, *reversed;* on appeal of Warfield & Howell, Spangler, Eroe & Co., and Doggett, Bassett & Hills Company, *affirmed.*

*Willard & Willard,* for appellant Frank Smith.

*W. R. Green* and *Nash, Phelps & Green,* for appellants Warfield & Howell, Spangler, Eroe & Co., Doggett, Bassett & Hills Company.

*L. L. DeLano* and *Green, Warple & Baxter,* for appellees Gilman & Ruhl and Turner & Jay.

Given, J.—I. We first consider the case as presented on the plaintiff's appeal. The contentions thereby presented are between the plaintiff and the attaching creditors. It is not questioned but that the plaintiff's mortgage is valid and binding upon Smith Bros., nor that it is prior in point of date to the mortgage to Sarah Archer and to all attachments. The contention is whether the plaintiff is entitled to priority, as to the firm's property, over creditors of the firm. In 1884 the defendants Ernest and O. D. Smith were each indebted to their father, the plaintiff, then and

since a resident of the state of New York, for which indebtedness each executed to the plaintiff a promissory note. In May, 1888, Ernest and O. D. Smith formed the partnership of Smith Bros. for the purpose of carrying on a retail store at Brayton, Audubon county, Iowa. On the fifth day of October, 1888, the notes to the plaintiff being past due, a note of the firm of Smith Bros. was, with consent of both partners, executed and delivered to the plaintiff for the amount of both former notes, and they were surrendered to the makers. On January 4, 1889, the plaintiff, having through his brother, then residing in Iowa, requested payment or security, Smith Bros., with the consent of both members, executed to the plaintiff the mortgage in question, covering all the property of the firm, to secure the firm note previously given. There is no question but that the defendants, Ernest and O. D. Smith, were each individually indebted to the plaintiff, and that this indebtedness was the only consideration for the note and mortgage of the firm. We are in no doubt but that the firm of Smith Bros. was insolvent at the time the firm note was executed to the plaintiff, and also at the time the mortgage was given. The value of the assets of the firm was then two thousand, five hundred dollars. Neither party owned other property of any considerable value. The liabilities of the firm to these attaching creditors were alone greater than the value of the assets, and if we add the two hundred and sixty-two dollars and seventy-five cents due to Mrs. Archer, and the two thousand, two hundred and ninety-nine dollars and fifty-six cents due to the plaintiff, it is apparent that not only the firm, but each member thereof, was largely insolvent at the times the note and mortgage were given. The partners must then have known that they were insolvent, but it does not appear that the plaintiff had such knowledge at the time he received either the note or the mortgage.

He was a resident of another state, had not been in Iowa, and, so far as it appears, had no reason to believe that Smith Bros. were not acting in good faith towards all their creditors. We are in no doubt, from the evidence, but that the plaintiff received the note and mortgage in good faith.

The plaintiff contends that the partnership of Smith Bros. had a right with the consent of both partners, to assume the individual debt of the members, and to mortgage the partnership property as security therefor, and that by executing the note and mortgage to him the indebtedness became a debt of the firm, and he a creditor thereof, and entitled to all the rights of such a creditor. These attaching creditors do not dispute the right of a solvent partnership to so dispose of its assets, nor do they claim to have had any lien upon the property at the time the mortgage was given. Their contention is that, the firm being insolvent, they had a right to preference in the firm's assets, as against creditors of the individual partners, and that, as no consideration passed to the firm for assuming these debts of the partners, the giving of this mortgage was a fraud upon them, and that as to them the same is void. In the view that we take of the case, it is not required that we determine whether the plaintiff became a creditor of the firm or not.

1. PARTNERSHIP: assets: rights of firm and individual creditors.

The question is, whether these attaching creditors were, at the time the mortgage was given, entitled to such preference in the property of the partnership as that they are entitled to priority over the mortgage. There are but few contentions that have been more productive of decisions by the courts and comments by authors than these disputes between creditors of partnerships and creditors of the partners. It is not practicable or necessary that we note all the cases cited, or attempt to reconcile apparent conflicts. An

examination of the cases in the light of the issues and facts in each will show that on points decided they are not at variance with the well established rules of the law on this subject.

The law is well settled that in the absence of contract, judgment, or levy, creditors of the firm have no lien upon its property; that while the firm is in existence, and no lien has attached, it may, in good faith and for value sell its property, and when so sold it will not be followed by any claim, in law or equity, of the creditors of the firm. *City of Maquoketa v. Willey*, 35 Iowa, 323. The contention under consideration is fully answered in *Poole v. Seney*, 66 Iowa, 502, wherein the question was, as here, whether mortgages given upon the firm's assets were fraudulent *per se*, as against the creditors of the partnership. The court says: "Where the assets of a partnership have gone into equity for distribution, the rule, undoubtedly, is that they will first be applied to the satisfaction of the debts of the partnership, and the separate creditors of the members of the firm can seek indemnity only from the surplus after the satisfaction of the partnership debts. *McCulloh v. Dashiell's Adm'r*, 1 Har. & G. 96; *Murray v. Murray*, 5 Johns. Ch. 60; *Murrill v. Neill*, 8 How. 414. This rule, however, is for the benefit of the partners. Each partner is individually liable for the debts of the partnership, but he has the right to have the property of the firm applied to their satisfaction. The creditors of the firm have no lien on, or equity in, the partnership property. Their right is simply to have the judgments which they may obtain on their claims satisfied out of the partnership property, or the individual property of the partners. As the rule exists for the protection of the partners, they may waive its benefits, and when they have done this the creditors have no grounds of complaint. This doctrine has been frequently recognized and affirmed by this court. See

*Scudder v. Delashmut,* 7 Iowa, 39; *Hawkeye Woolen Mills v. Conklin,* 26 Iowa, 422; *City of Maquoketa v. Willey,* 35 Iowa, 323; *George v. Wamsley,* 64 Iowa, 175. See, also, *Ladd v. Griswold,* 4 Gilman, 25.'' See, also, *Case v. Beauregard,* 99 U. S. 119.

If it may be said that, this case being in equity, the assets of this partnership are in equity for distribution, they must surely be distributed with due regard to rights which had attached before they were brought into equity. We have seen that while the firm was in existence, and in full possession of the property, free from any lien, with the right to dispose of the same, with the consent of both partners, for value, and without any intentional fraud, they executed to the plaintiff the note and mortgage in suit, thereby waiving their right to have the mortgaged property first applied to the satisfaction of the debts of the partnership. We have also seen that the plaintiff received this note and mortgage in good faith and for value. The partners having thus waived their right, it can not be invoked on behalf of the creditors of the firm. Among the many cases cited are the following Iowa cases, referred to by the attaching creditors, which we should notice, namely: *Switzer v. Smith,* 35 Iowa, 269; *Gordon v. Kennedy,* 36 Iowa, 167; *Cox v. Russell,* 44 Iowa, 556; *Fargo v. Ames,* 45 Iowa, 491. It is sufficient to say of these cases, and those cited therein, that the question before us was either not involved, or not discussed and considered, and that in neither of them did the partners waive their right to have the partnership property first applied to the payment of partnership debts, as was done in this case. We reach the conclusion that these attaching creditors did not have such right or interest in the property of the partnership, at the time it was mortgaged to the plaintiff, as to entitle them to preference over that mortgage.

II.  The mortgage to Sarah Archer was executed January 7, 1889, by Smith Bros. and both mem-

2. ——: ——:          bers of the firm, on all the merchandise
  ——.                of the firm, subject to the mortgage
to the plaintiff, to secure two promissory notes
previously given. One note was given November
10, 1887, by Ernest Smith, with O. D. Smith as
surety, for one hundred and fifty dollars borrowed
money, due four months after date, and is unquestion-
ably the individual debt of Ernest Smith. There is
testimony showing that part of the money borrowed
was put into the firm's business by Ernest Smith, but
this fact does not make it a debt of the partnership.
The other note was given December 7, 1888, by the
firm, for one hundred dollars loaned to it, due ninety
days after date, and is unquestionably a debt of the
partnership. Sarah Archer, hearing that the mortgage
had been given to the plaintiff, called upon Smith Bros.
to know what she should do about her pay. She was
informed that they had no money, but would give her
a second mortgage on their merchandise; and there-
upon, and without other consideration than the pre-
existing indebtedness, the mortgage in question was
executed. There is no evidence of fraud, intentional
or otherwise, upon the part of either party to this
mortgage. It follows from what we have said as to the
plaintiff's mortgage that this mortgage is valid, regard-
less of whether the indebtedness secured thereby was
that of the firm, or of the individuals composing it, or of
both. The attaching creditors are not entitled to pref-
erence over this mortgage.

III. The record discloses that one Bradley inter-
vened, claiming certain articles of merchandise, of
which he was adjudged to be the owner, and entitled to
possession. No question is made as to this part of the
judgment.

It follows from the conclusions that we have
reached that the plaintiff is entitled to decree declaring
his mortgage a first lien upon the property described

therein; that Sarah Archer is entitled to decree fore-closing her mortgage for the full amount due thereon, and that the same be declared a second lien. That Gilman & Ruhl and Turner & Jay, having complied with chapter 117, Acts 1886, are subrogated to all the rights of Sarah Archer under said mortgage, and under said chapter 117, to have their judgments against Smith Bros. declared a third lien upon the proceeds of said property. The other attaching creditors are entitled to preference in the order in which the attachments were levied in their favor against Smith Bros. The case will be remanded for decree in conformity with this opinion.

Reversed on plaintiff's appeal, and affirmed on the appeal of Warfield & Howell, Spangler, Eroe & Co., and Doggett, Bassett & Hills Company.