Johnston & Son, Joseph Johnston, and O. P. Johnston, Appellants, v. William Robuck and J. M. Amos, Defendants, and Harry Watkins. Intervener.

**Chattel Mortgage:** foreclosure. A chattel mortgage executed to secure a debt past due, may be foreclosed *eo instante*, on delivery.

Private sale. A chattel mortgagee of a stock of goods may, if he acts in good faith and with ordinary prudence, sell the property at retail, under a provision of the mortgage authorizing to sell at private sale. Citing *Wygal v. Bigelow* (Kan. Sup.) 24 Am. St. 495; *Hanna v. Harrington*, 18 Ark. 85; *Stromberg v. Lindberg*, 25 Minn. 53; *Hungate v. Reynolds*, 72 Ill. 425.

Conversion. A chattel mortgagee who takes possession of the property before the happening of any of the contingencies which give him the right to take possession, is guilty of conversion.

Consideration. An existing indebtedness is ample consideration, as between the debtor and creditor, for the execution of a mortgage securing its payment. Citing *Kranery v. Simon*, 65 Ill. 344; *Louthain v. Miller*, 85 Ind. 161; *McMurtrie v. Riddell*, 9 Colo. 497; *Smith v. Worman*, 19 Ohio St. 145; *Shufeldt v. Pease*, 16 Wis. 659; *Cromelin v. McCauley*, 67 Ala. 562; *Heltman v. Griffith*, 43 Kan. 53; *Corning v. Medicine Co.*, 46 Mo. App. 16; *Henry v. Vliet* (Neb.) 49 N. W. Rep. 1107; *Gassen v. Hendrick*, 74 Cal. 444; *Bank v. Carrington*, 5 R. I. 515; *Fair v. Howard*, 6 Nev. 304.

Same. A corporation may secure the payment of the individual indebtedness of one member of the firm, where it is solvent, and there is no intention to defraud subsequent creditors.

*Partnership.* Existing indebtedness is ample consideration for the execution of a mortgage by a firm, of which the debtor is a member, securing its payment, as between the mortgagee and the members of the firm.

**Transfer to Equity.** The court did not err in transferring a cause from the law to the equity side of the calendar on its own motion, where the petition did not state a cause of action.

Waiver of error in. Going to trial does not waive the error of the court in transferring a law case to the equity side of the calendar.

| | |
|---|---|
| 104 | 523 |
| 106 | 654 |
| 104 | 523 |
| f108 | 219 |
| 104 | 523 |
| 110 | 420 |
| 104 | 523 |
| 111 | 509 |
| 104 | 523 |
| 112 | 520 |
| 104 | 523 |
| 128 | 591 |
| 104 | 523 |
| 129 | 358 |
| 104 | 523 |
| 138 | 356 |
| 138 | 386 |
| 104 | 523 |
| 140 | 582 |
| 142 | 138 |
| 104 | 523 |
| 143 | 702 |
| 144 | 55 |

SAME. Issues cognizable in equity may be transferred to the equity
8  side, under Code, section 3433, but not issues at law, and no motion
is required to have those tried separately in the proper forum.

Trial: LAW AND EQUITY. The ordinary rule is to hear the equitable
1  issues first; but where a trial at law will practically settle all mat-
ters in controversy, it ought to be first had.

*Appeal from Marion District Court.*—HON. A. W. WIL-
KINSON, Judge.

THURSDAY, JANUARY 27, 1898.

ACTION against defendants for the value of a stock
of goods alleged to have been converted. Decree for
defendants, and plaintiffs appeal.—*Affirmed.*

*Earle & Prouty* and *S. C. Johnston* for appellants.

*L. N. Hayes* for appellees.

LADD, J.—The firm of Johnston & Son, consisting
of Joseph and O. P. Johnston, were engaged in the gen-
eral mercantile business at Knoxville, and on June 14,
1895, executed a chattel mortgage on their stock of
goods to Henry Watkins and William Robuck, securing
the payment of a note of five thousand, four hundred
dollars, to the former, payable June 14, 1896, and a note
to the latter of three thousand, two hundred dollars,
due September 14, 1896. Thereafter, though on the
same day, the firm executed a second mortgage to Wil-
liam Robuck, securing the payment of a note of three
hundred and thirty-two dollars, due September 14,
1896, and another note of four thousand, five hundred
and fifty-nine dollars and thirty-six cents, signed by
Johnston & Frush, which had matured January 6, 1894,
The notes referred to represented debts of Johnston &
Son, except the last, which Joseph Johnston, a member
of the firm of Johnston & Frush, had assumed and
agreed to pay. On the following day, Johnston & Son

gave a third mortgage to other creditors, securing the payment of divers sums, aggregating one thousand, seven hundred and forty dollars and forty-nine cents. On June 19, 1895, Robuck, with the consent of Watkins, placed the second mortgage in the hands of his co-defendant Amos, sheriff of Marion county, with instructions to foreclose. Amos, theretofore, took possession of the entire stock of goods, and advertised it for sale July 8. Two days before the day fixed for the sale, he was served with a written notice by Johnston & Son and O. P. Johnston, warning him not to sell, and not to pay the Johnston & Frush note out of the proceeds, if he did sell, and demanding immediate possession of the goods. The property, however, was offered for sale at public auction; but, as there were no bidders, the sheriff proceeded to sell at retail. This action was brought for the value of the stock of goods, basing the claim for damages on two grounds: (1) That, as the Johnston & Frush note did not represent an indebtedness of Johnston & Son, the mortgage securing its payment was without consideration and void, and, the three hundred and thirty-two-dollar note not being due, the foreclosure proceedings were premature; (2) the mortgage, by its terms, conferred no authority to sell at retail. The defendants justified their action in foreclosing on several grounds, and asked, in their counter-claim, that a decree of foreclosure be entered. Watkins and the creditors of the third mortgage intervened, praying that the money held by or due from defendants be applied on their mortgages. After a jury had been impaneled for the trial of the case, the court, on its own motion, discharged it, and transferred the cause to the equity side of the calendar, and there heard it.

I.   It may be conceded that, unless the petition failed to state a cause of action, the court erred in

ordering the issues at law to be tried in equity. Under section 3435 of the Code, on motion, issues cognizable in equity may be transferred to the equity side, but not the issues at law, and no motion is required to have these tried separately in the proper forum. It is said in *Byers v. Rodabaugh*, 17 Iowa, 53, "that the right to have an action transferred from one docket to another arises only where the plaintiff has brought his action by the wrong proceedings; that is, where he has brought his action by ordinary, when he should have adopted equitable, proceedings, and *e converso*." *Morris v. Merrit*, 52 Iowa, 496, is in point. Referring to this section, Beck, J., says, "that issues exclusively cognizable in equity shall be tried as equitable proceedings; *i. e.* by the court without a jury. Other issues, not cognizable in equity, are to be tried as issues at law; *i. e.* by a jury. This is the obvious meaning of the section. In actions at law, therefore, when equitable issues are presented, they are triable as in chancery. Pure issues at law, which are not cognizable as in equity, are to be tried to a jury." Where the issues are mixed, the procedure seems to be somewhat controlled by statute. For this reason, defenses at law to an equitable action must be determined by the chancellor. *Ryman v. Lynch*, 76 Iowa, 587; *Frost v. Clark*, 82 Iowa, 298; *Wilkinson v. Pritchard*, 93 Iowa, 308; *Leach v. Kundson*, 97 Iowa, 643; *Gatch v. Garretson*, 100 Iowa, 252; *Evans v. McConnell*, 99 Iowa, 326. Going to trial does not waive the error of the court in changing the form of action. *Rabb v. Albright*, 93 Iowa, 50. Undoubtedly, the ordinary rule is to hear the equitable issues first. But, where a trial at law will practically settle all matters in controversy, it ought to be first had. *Morris v. Merritt, supra.*

II. We inquire, then, whether a cause of action is stated in the petition. Each mortgage is set out, and

contains this clause: "And I, the said Johnston & Son, do hereby covenant and agree to and with the said Wm. H. Robuck that in case of default made in the payment of the above-mentioned promissory note, or in case of my attempting to dispose of the same, other than in the ordinary course of trade, or remove from said county of Marion, the aforesaid goods and chattels, or any part thereof, then, in that case, it shall be lawful for the said mortgagee or his assigns, by himself or agent, to take immediate possession of said goods and chattels, wherever found,—the possession of these presents being his sufficient authority therefor,—and to sell the same at private sale or public auction, or so much thereof as shall be sufficient to pay the amount due or to become due, as the case may be, with all reasonable costs and attorney's fees pertaining to the taking, keeping, advertising, and selling of said property."

So that, on the happening of one of the three contingencies, the mortgagee might proceed to foreclose, but until then he acquired no such right, and the taking of possession, and sale, prior to that time would amount to a conversion. *Edwards v. Cottrell*, 43 Iowa, 194; *Howery v. Hoover*, 97 Iowa, 581; *Gravel v. Clough*, 81 Iowa, 272; *Colby v. W. W. Kimball Co.*, 99 Iowa, 321; *Eslow v. Mitchell*, 26 Mich, 500.

III.   The second mortgage was signed by Johnston & Son and O. P. Johnston. The note of Johnston & Frush represented the individual debt of Joseph Johnston, and not that of the firm, or of the other member thereof. Time for payment of the note was not extended. Appellants argue that it was to be, and, for this reason, the mortgage was invalid. That issue is not raised by the pleadings. An existing indebtedness is ample consideration, as between the parties, for the execution of a mortgage securing its payment. Jones, Chattel Mortgages, section 81; *Kranert v. Simon*, 65 Ill. 344; 15 Am. & Eng. Enc. Law,

758; *Louthian v. Miller,* 85 Ind. 161; *McMurtrie v. Riddell,* 9 Colo. 497 (13 Pac. Rep. 181); *Smith v. Worman,* 19 Ohio St. 145; *Shufeldt v. Pease,* 16 Wis. 659; *Cromelin v. McCauley,* 67 Ala. 542; *Heitman v. Griffith,* 43 Kan. 553 (23 Pac. Rep. 589); *Corning v. Medicine Co.,* 46 Mo. App. 16; *Henry v. Vliet,* 33 Neb. 130 (49 N. W. Rep. 1107); *Gassen v. Hendrick,* 74 Cal. 444 (16 Pac. Rep. 242); *Bank v. Carrington,* 5 R. I. 515; *Fair v. Howard,* 6 Nev. 304; *Smith v. Smith,* 87 Iowa, 93; *Koon v. Tramel,* 71 Iowa, 137; *Clark v. Barnes,* 72 Iowa, 563. And a co-partnership may secure the payment of the individual indebtedness of one member of the firm. *Poole v. Seney,* 66 Iowa, 502; *Smith v. Smith, supra;* Jones, Chattel Mortgages, section 44. In joining in the execution of the mortgage securing the payment of the individual indebtedness of Joseph Johnston, the other member of the firm simply waived his right to have the firm property applied to the satisfaction of its debts. This right was for his benefit, and it was his privilege to allow the individual debts of Joseph to be first paid. The order in which the assets of the firm were to be disposed of was for the determination of the partners. They were supposed to know their respective interests therein, and, having agreed that the property might be appropriated by Joseph Johnston, in securing his indebtedness, they are not in a situation to complain. It simply amounted to an understanding, in the absence of any showing to the contrary, that Joseph had an interest in the assets equal, at least, to the debt secured, and consent that he might withdraw therefrom to this amount. The agreement that this might be done was certainly valid, as between the partners; and, the consideration as to Joseph Johnston being sufficient, the validity of the mortgage will be upheld. *Smith v. Smith, supra.*

IV.   The mortgage was executed to secure a debt, past due, and the mortgagee had the right to foreclose it, upon delivery, *eo instante*.   Jones, Chattel Mortgages, section 770; *Farrell v. Bean*, 10 Md. 217.   See, also, *Bearss v. Preston*, 66 Mich. 11 (32 N. W. Rep. 912); *Phelps v. Fockler*, 61 Iowa, 340.

V.   By the terms of the mortgage, the mortgagee was authorized to sell at private sale.   This meant in the manner that property of the kind is usually disposed of, for cash, other than at public auction. It cannot be said that the sale must be invariably made at retail, or so made in bulk.   The mortgagee, in such cases, is the trustee for the mortgagor, and is required to act in entire good faith, and conduct the sale fairly.   The manner of doing this necessarily depends largely upon the character of the property and the opportunities presented.   He must sell the articles separately, in lots, or all together, as may best suit the convenience of buyers, and insure the largest returns. If, in doing this, he acts in good faith, and with ordinary prudence, the law exacts no more.   See *Wygal v. Bigelow*, 42 Kan. 477 (24 Am. St. Rep. 495, and notes; 22 Pac. Rep. 612); *Hannah v. Carrington*, 18 Ark. 85; *Stromburg v. Lindberg*, 25 Minn. 513; *Hungate v. Reynolds*, 72 Ill. 425.   There is no allegation of bad faith or negligence, and, in the absence of both, it cannot be said that sale at retail was not authorized.

VI.   It thus appears that the petition did not state a cause of action, as the mortgage, by its terms, was mature, and Robuck had the right to foreclose it.   Sale of the goods at retail was not necessarily unlawful. The counter-claim and the petitions of intervention raised the only issue to be determined, and the court rightly heard them in the proper forum.   No motion was made to so hear them, but none was required.   No prejudice can result to anyone in

having a trial where the law requires it. In view of our conclusion, the other errors alleged are not considered. —AFFIRMED.